DOMINICK G. RILEY, Appellant, *v.* SAMUEL P. TULL, Respondent.

First Department, March 7, 1919.

Attorney and client — personal liability of attorney for services of private detective in procuring evidence to be used in a contemplated action by a client for divorce — assumption of liability by attorney to pay for such services — evidence.

Where one acting as an attorney, in behalf of a client, engages a private detective to procure evidence for use in a contemplated action for divorce, the client ordinarily is liable to pay for such services; but where it appears

that the services were rendered in response to an express agreement on the part of the attorney to pay therefor, and upon the strength of his personal credit, he may be held personally liable in an action by the detective.

In an action by a private detective against an attorney to recover for services alleged to have been rendered by the plaintiff at the defendant's request in shadowing the husband of defendant's client, evidence examined, and *held*, to establish that defendant himself had assumed liability for plaintiff's services and had become responsible to pay therefor.

SMITH, J., dissented.

APPEAL by the plaintiff, Dominick G. Riley, from an order and determination of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on or about the 17th day of December, 1917, reversing a judgment of the Municipal Court, Borough of Manhattan, Sixth District, in plaintiff's favor for the sum of $504, and granting a new trial.

*Harold M. Phillips* of counsel [*H. Salmon Miller* with him on the brief], for the appellant.

*William Himlyn* of counsel [*Horwitz & Rosston*, attorneys], for the respondent.

MERRELL, J.:

The plaintiff is a private detective and the head of an incorporated detective agency bearing his name. The defendant is an attorney and counselor at law.

The action is to recover for services rendered by the plaintiff at defendant's request in shadowing one Georges Polacco. The action was tried in the Municipal Court and a verdict rendered in favor of the plaintiff and against defendant for $504. On appeal to the Appellate Term the judgment entered on the verdict of the jury in the Municipal Court was reversed by a divided court. An appeal has been permitted to this court to review the determination of the Appellate Term.

Aside from the value of the services rendered, the only question involved upon this appeal is as to whether the defendant, who concededly sought the services of the plaintiff in behalf of a client, pledged his own credit in payment for the services rendered.

The plaintiff testified that he had had some previous acquaintance and business experience with the defendant. The defendant, prior to the investigation involved herein, had required the services of the plaintiff in obtaining testimony in other divorce actions, and in one of which the defendant himself was a party. The evidence would also indicate that the defendant had himself paid plaintiff for such prior services, although on one occasion difficulties had arisen between them with reference to the services or compensation, and plaintiff was only able to obtain his pay by bringing suit against the defendant.

The plaintiff testified that on December 28, 1916, defendant called him upon the 'phone and asked plaintiff to call at his office, and informed plaintiff that he wanted to assign a case to him. Plaintiff further testified that defendant said: "I want you to handle this case personally, and I want you to come to my office."

Plaintiff further testified that defendant told him he was leaving for Philadelphia, and could not see him at his office, but, in company with an assistant operator in his employ, plaintiff met the defendant at the Hudson Tube and had an interview with him relative to the work to be undertaken. Plaintiff testifies that defendant requested him to place a shadow on said Polacco, whom he explained he suspected of being intimate with a young woman connected with the Metropolitan Opera House, and that defendant said to plaintiff: "Captain, I want you to handle this case personally yourself; give it your personal attention. I want you to put a couple of men on it, the best men you have got."

Plaintiff further testifies that the details of the case were discussed, and that defendant told him where Madame Polacco and her husband lived, and also as to where the person with whom he was charged with intimacy lived. Plaintiff also testified that defendant told him that Madame Polacco was a friend of his family, of his wife and himself, and assigned such intimacy as his reason for asking the plaintiff to go on the case personally. Plaintiff further testified that defendant further said to him on this occasion: "I want you to start on this case immediately. I want you to call me up at my house or my office, keep in touch with me daily, and let me

know just exactly how it is getting along. I will mail you $100 on account."

Plaintiff testifies that during the conversation and before the statement that defendant would mail him $100 on account, defendant inquired and plaintiff informed him that for his services he would charge $8 a day for each operative, and disbursements, and if he required his own personal services, that he would take that into consideration, the inference being that he would charge more for his own services, and that in response to such statement as to charges, the defendant said: " Dominick, I want you on the case yourself; I want you to give it your personal attention, and when the case is over you will be well paid."

Plaintiff was furnished a particular description of the man, Georges Polacco, who was to be shadowed.

Plaintiff claims never to have seen defendant's client, Madame Polacco, until several days after this initial conversation, and after a substantial part of the services rendered by the plaintiff and his operatives had been performed. Plaintiff states that on that occasion he met Madame Polacco casually at defendant's office, and that while the matter of his compensation was not discussed, Madame Polacco furnished him with a photograph of her husband, and discussed with him generally the details of the case. The plaintiff testifies that immediately after he was retained by defendant, work was commenced upon the case, and continued until January 4, 1917 — seven days in all. In carrying on this investigation plaintiff testified that two of his operatives were at work each day until the last day, when three were engaged, and that during this time plaintiff himself took personal charge and supervision of the work. Reports were daily made by the operatives and furnished defendant. These reports were introduced in evidence, and it would appear therefrom that facts were discovered which would have justified the bringing of an action on the part of Madame Polacco to obtain a dissolution of her marriage with her husband. The final report, made on January 4, 1917, details the operations of three of plaintiff's employees, resulting in the finding of the man, Georges Polacco, in the apartment of the young woman with whom he was charged with intimacy, known as the Allerton Apartments,

600 West One Hundred and Thirteenth street. There the three operatives in plaintiff's employ, accompanied by Madame Polacco, discovered the latter's husband in a compromising position with the woman.

No action was ever brought by Madame Polacco to divorce her husband, nor is any explanation offered why she refrained from asking that her marriage with her husband be dissolved, if, indeed, such action was ever contemplated.

Plaintiff testifies that daily reports of the progress of the case were made to the defendant, and finally on January fourth, plaintiff informed the defendant of the result of his efforts and of his success in obtaining conclusive evidence against Polacco, at which the defendant expressed delight, and asked plaintiff to call upon him the following day at his office. In response thereto plaintiff called upon defendant and in answer to defendant's inquiry stated that he would charge the defendant $750 for his services, to which defendant replied: " Why, Dominick, that is very fair; you have done excellent work, and I am going to see that you are paid."

Plaintiff testified that from his experience and knowledge of charges made in such matters, the charge which he had made to the defendant was reasonable and fair. Plaintiff testifies that he saw defendant the following day at Delmonico's and that there, in the presence of defendant's partner, defendant asked plaintiff if he had told his partner the amount of his charges, to which plaintiff replied in the affirmative. The $100 which plaintiff testified he was to receive from defendant on account was never paid, nor has plaintiff received anything for his services or expenses. Plaintiff testifies that he called upon defendant frequently at his office and by 'phone and requested payment of his bill, and that he had a further conversation with the defendant, also at Delmonico's, about January 22, 1917, in which defendant, for the first time, informed plaintiff that he was not going to use the evidence in the Polacco case, " on account of Mrs. Polacco withdrawing her evidence;" and that defendant then asked plaintiff to reduce his bill, stating to plaintiff that he was not going to charge Madame Polacco anything, and that he, defendant, would have plenty of work for plaintiff in the future; that he had a great deal of confidence in plaintiff, and asked

plaintiff to reduce his bill so as to make it about $500, and then said to plaintiff: " If you reduce your bill to about $500 and submit a sworn affidavit to me tomorrow or next day or as soon as you can, I will send a check immediately for $500."

Plaintiff testified that it was thereupon agreed that his bill would be reduced and that thereafter the affidavits of his operatives, three in number, were sent to defendant, as requested. Defendant did not respond with the promised payment, and plaintiff testifies that thereafter almost daily he spoke to defendant about the bill, requesting its payment, but that no part of it had ever been paid.

Defendant and Mrs. Polacco place the date when the latter had the first interview with the plaintiff at about the date that defendant first called plaintiff into the case. Mrs. Polacco testified that on this occasion at defendant's office defendant told plaintiff what the case was, and that the witness wanted a divorce, and that some discussion was had as to the necessity of shadowing Mr. Polacco only; and that on that occasion the witness furnished him with a photograph of her husband and other descriptive details and information relative to his clothing, etc. Defendant testifies also that the conversation between plaintiff and Mrs. Polacco occurred at his office on December twenty-ninth, as defendant thought, and that in that conversation defendant told plaintiff that he wanted him to discuss with Mrs. Polacco as to what he was going to charge her and what he proposed to do, so that their financial arrangements might not be misunderstood, or that in effect, and that pursuant thereto it was agreed, and defendant advised Mrs. Polacco to pay eight dollars a day for the service of each of plaintiff's operatives who should work upon the case.

I think the version of the plaintiff with reference to the time when such conversation with Mrs. Polacco occurred was probably the true one, as by the report of January 1, 1917, which would be at least three or four days after the time when it is claimed by the defense that the photograph of the client's husband was furnished the detectives, they had apparently not yet received it, as indicated by the report of their operations on January first, wherein the person under observation was

described as a person of " 40 years, 140 lbs., 5 ft. 5 in., dark gray fedora hat, black overcoat, black shoes with brown tops, white chamois gloves, white muffler around neck, carrying a cane," and no reference being made to any photograph. There is no indication from such report that the detectives were depending upon any identification save the general information as to stature, weight and apparel, etc., which plaintiff had received from defendant when he was first retained.

Plaintiff never was able to obtain payment of the $504 at which sum he claims his bill was adjusted, and finally brought this action to recover the full value of his services. Plaintiff disclaims any acquaintance with Madame Polacco, defendant's client, until the services had been nearly all rendered, and it does not appear that the plaintiff ever rendered her any bill for services or made any claim against her. Plaintiff depends entirely on his contract with the defendant and the latter's assumption of liability for his services.

On the other hand, the defendant denies that he ever, in any way, obligated himself personally to pay the plaintiff for such services, the position of the defendant being that he was at all times acting as the agent of Madame Polacco, and that she alone was liable to pay plaintiff for his services.

I think the plaintiff presented evidence upon the trial justifying the jury in finding that defendant himself had assumed liability for plaintiff's services. While it is undoubtedly true that these services were rendered for the benefit of defendant's client and were understood to be with a view of obtaining evidence by which Madame Polacco could bring suit for divorce against her husband, still I think the circumstances and evidence show that defendant himself became responsible to pay for plaintiff's services. The decision, after evidence was obtained upon which defendant's client might have brought action for divorce against her husband, to discontinue proceedings to dissolve such marriage, was apparently a considerable factor in the matter of discharging the obligation to the plaintiff. Had action been brought and the evidence which plaintiff had obtained been used, defendant would probably never have disputed the amount of or his personal liability for plaintiff's bill.

Defendant's client's husband is said to have been wealthy, and if action for divorce had been brought against him, provision might easily have been made for plaintiff's bill through allowances which he would have been required to pay for counsel fees and expenses of his wife. Having decided to discontinue the effort to dissolve the marriage between Mr. and Mrs. Polacco, and the defendant having determined to make no charge against his client, it is not unnatural that he should have tried to minimize the amount of plaintiff's bill. And it is very probable that what plaintiff testified to actually occurred, when defendant informed plaintiff that no further action would be taken in the matter; that he himself would make no charge against Madame Polacco and that defendant asked plaintiff to reduce his bill, holding out as an inducement the promise of future remunerative business. That defendant understood he was personally obligating himself in the matter is evidenced by his agreement to mail the plaintiff $100 on account at the time plaintiff was retained and his failure to dispute for two or three weeks the amount of plaintiff's charges, and defendant's failure to tell Madame Polacco that plaintiff wanted $750 for his services. Madame Polacco admitted on cross-examination that her attorney never told her that plaintiff had rendered such a bill, and that defendant never informed her that plaintiff wanted $750 for his services, although defendant was advised of the amount thereof on or about the fifth of January. On January 23, 1917, defendant wrote plaintiff, stating that he had received no itemized statement of the latter's bill, and promising immediate attention when the account should be furnished. Three days later plaintiff wrote defendant, inclosing an itemized account for services, amounting to the sum of $504, and asking defendant's immediate attention thereto. Plaintiff testifies that defendant personally and by 'phone almost daily thereafter in response to plaintiff's requests, promised to send a check for the amount of the bill as thus finally rendered, but never did so. On March 13, 1917, defendant wrote plaintiff, stating that he had carefully considered plaintiff's bill, with Mrs. Polacco, and had consulted several attorneys, and that he could not advise his client to pay plaintiff the sum of $250 included in said itemized bill for plaintiff's personal services, or $40 for plaintiff's

personal disbursements, without having them itemized. In this letter defendant further states that under the terms of the employment plaintiff's bill should have been $214, and as to that defendant wrote plaintiff: "This amount, to wit, $214, I will pay immediately, but it must be accepted in full. This is my final position in the matter."

I think the circumstances which were presented to the jury clearly justified the verdict in favor of plaintiff. There is no serious dispute as to the law applicable to the case. It is well settled that where one acting as an attorney in behalf of a client engages such services as were rendered by the plaintiff, ordinarily the client is alone liable to pay for such services, but where it appears, as I think it does fairly from the evidence in this case, that the services were rendered in response to an express agreement on defendant's part to pay therefor, and where it appears, as it does conclusively here, that the services were rendered upon the strength of the defendant's personal credit, the plaintiff may recover of the attorney for such services. (*Covell* v. *Hart*, 14 Hun, 252.)

At the time these services were engaged, no action had been brought, and whether or not one would ever be brought was entirely dependent upon what the investigation to be carried on by the plaintiff should discover. The plaintiff had no acquaintance with defendant's client, but had had considerable acquaintance and previous business relations of the same general character with the defendant himself, and naturally would look to the defendant for his pay for services rendered. I do not think it can fairly be said that at the time plaintiff undertook to shadow the man, Georges Polacco, he necessarily knew that he was working for defendant's client. The jury were justified in concluding that he had no talk or contract with her personally, and apparently credit was extended solely to the defendant, who engaged his services. Plaintiff's investigations occupied a period of seven days, during the first five of which, if plaintiff is to be believed, he had no acquaintance with defendant's client, and depended entirely on such information as defendant furnished him.

I think the evidence fully justified the verdict of the jury

in the Municipal Court, and that the same was improperly reversed at Appellate Term, and that the Appellate Term determination should be reversed, with costs, and judgment of the Municipal Court affirmed, with costs.

CLARKE, P. J., LAUGHLIN and DOWLING, JJ., concurred; SMITH, J., dissented.

Determination reversed, with costs, and judgment of the Municipal Court affirmed, with costs.