William McDOWELL, d/b/a McDowell
Asphalt Paving Co.,
Plaintiff-Respondent,

v.

Marsh C. MILLER, Defendant-Appellant,

and

Gladys S. Miller, Defendant.

No. 10353.

Missouri Court of Appeals,
Springfield District.

Oct. 12, 1977.

FLANIGAN, Judge.

Plaintiff William McDowell, an individual doing business as McDowell Asphalt Paving Co., brought this action against Marsh C. Miller and Gladys S. Miller, husband and wife, for the balance allegedly due plaintiff for work and materials furnished in connection with the construction of a race track. The petition alleged that the defendants "have made some payments on the initial amount of $98,679.20" but refused to pay the balance due of $17,772.75. The petition sought judgment in the latter amount, together with interest. The trial court, sitting without a jury, awarded plaintiff judgment in the amount of $17,772.75 against defendant Marsh C. Miller, and the latter appeals. The trial court also found against plaintiff on his claim against Gladys S. Miller but the correctness of that ruling, not attacked by either side, is not involved on this appeal.

Defendant Marsh C. Miller is the president of Rolla Speedway, Inc., ("Speedway"), a Missouri corporation, which was formed in 1968. Defendant is also the owner of Miller's Auto Salvage ("Salvage"), an unincorporated business.

Defendant's first point is that the trial court erred "in rendering judgment for the plaintiff and against defendant on plaintiff's theory of quantum meruit because the evidence was that [Speedway], and not defendant, received the benefit in value of the services rendered by plaintiff."

Appellate review of this nonjury action is governed by Rule 73.01[1] as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The principles stated there have received compliance but need not be restated.

Speedway, the corporation, on May 28, 1971, signed, as lessee, a lease of "a portion of fairgrounds" located south of Rolla, Missouri, "for the purpose of constructing and operating an automobile race track." The

John Z. Williams, Williams & Smallwood, Rolla, for defendant-appellant.

Dan L. Birdsong, Routh, Thomas, Birdsong & Hutton, Rolla, for plaintiff-respondent.

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969 V.A.M.S.

lease had an initial term of 10 years commencing January 1, 1971. The lease included the agreement by Speedway that it would build the track "at their (sic) own expense." The lease was executed by the lessee in this manner:

ROLLA SPEEDWAY, INC., Lessee

/s/ M. C. Miller

President

/s/ Gladys Miller

Attest. Secretary

It bore the corporate acknowledgment, executed by defendant as Speedway's president, and the corporate seal.

Sometime between December 1970 and March 1971 defendant had a conversation with plaintiff in which defendant said that he was going to build a race track and pave it. Plaintiff told defendant that plaintiff was thinking about buying an asphalt plant and wanted to know if plaintiff "could be sure of his job." Defendant said, "You are going to do my job, Bill." The following was elicited on direct examination of plaintiff:

"Q. Did he ever mention anything, except him requesting the work? Did he, himself, request that he wanted the work done?

"A. Best of my knowledge it was just Mr. Miller."

In late May 1971 plaintiff, at the request of defendant, began the construction of the race track. Over 99 percent[2] of the work was completed by July 1, 1971.

On June 10, 1971, plaintiff submitted to defendant two written "proposals," respectively identified at the trial as Exhibit 1 and Exhibit 2. Both Exhibit 1 and Exhibit 2 were on printed forms bearing plaintiff's business name. Each showed that the proposal was submitted to "M. C. Miller." A typewritten portion of each stated that plaintiff would furnish "all labor and mate-

rials." Exhibit 1 dealt with the laying of a 4-inch "base rock, water and roll on race track, priming, and laying 4-inch asphaltic concrete in two 2-inch lifts." The typewritten portion of Exhibit 1 also stated, "$4.00 per ton for base on track, $20.00 per ton for asphaltic concrete on track."

The lower portion of Exhibit 1 was entitled "Acceptance of Proposal." It contained the following language: "The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above." On June 16, 1971, defendant signed Exhibit 1, the signature being "M. C. Miller."

Exhibit 2 differed from Exhibit 1 in that the former dealt with the "pit area" and a road. The depth of the "base rock, water and roll" was two inches and the depth of the "asphaltic concrete" was two inches. Exhibit 2 called for "$2.80 a ton for base rock" and "$15.20 a ton for asphaltic concrete." Defendant signed Exhibit 2 in the same manner as he signed Exhibit 1.

Neither Exhibit 1 nor Exhibit 2 contained the corporate name of Speedway or made any reference to the corporation.

Plaintiffs's evidence showed the amount due plaintiff for performing the work described in those two exhibits was $97,761.20. Payment on that indebtedness emanated from three sources:

1. Speedway. These payments were by 27 corporate checks, the first dated June 8, 1971, and the last dated June 10, 1974. Four checks were written in 1971—11 in 1972—8 in 1973—and 4 in 1974.

2. Salvage. Beginning August 16, 1971, and ending on December 13, 1973,[3] plaintiff from time to time purchased automobile parts and supplies from Salvage but did not pay for them. Plaintiff treated the amount

---

2. In 1972 plaintiff performed additional work amounting to $918. It is not clear whether that item was included in plaintiff's computations of defendant's total indebtedness prior to crediting payments. One of plaintiff's witnesses testified that the item "has all been paid." Defendant's brief attaches no importance to the

$918 item so this court does not consider its significance, if any.

3. Defendant's evidence showed an additional item was purchased by plaintiff from Salvage in 1975. Defendant was given credit for the amount of that purchase.

of each such purchase as a payment by defendant on defendant's indebtedness to plaintiff. Defendant's evidence showed that plaintiff "does not owe Salvage anything." Salvage also made four payments[4] (three in 1972 and one in 1973) by check, the smallest being $1,000 and the largest being $1,312.54.

3. Defendant. On June 20, 1971, defendant made a cash payment of $2,000 and a payment by check of $3,000.

Defendant testified that plaintiff's workmanship was superior and that the job was done in a satisfactory manner. Defendant admitted that, prior to the trial, he had testified, apparently by deposition, that he had no disagreement "with the balance due." Defendant admitted that he had been told by plaintiff that "the original full price for all the work done out there was $98,679.20" (apparently including the $918 item mentioned in footnote 2) and that he, defendant, had not "expressed any dissatisfaction" with that total until time of trial. Defendant testified that his disagreement, at time of trial, "with the balance due" was "the number of yardage charged, number of tons." Defendant thought "there is not that amount of tons there" because he had had the track and pit surveyed and measured.

Plaintiff's evidence showed the number of tons of base rock and asphaltic concrete used in the construction of the race track (Ex. 1) and the pit area and road (Ex. 2). These tonnage figures, applied to the rates respectively prescribed in the two exhibits, justify plaintiff's computation of the total amount of the indebtedness ($97,761.20) prior to the crediting of payments.

The tonnages were based upon actual weighings conducted at plaintiff's asphalt plant. The trial court rejected defendant's evidence which sought to show that plaintiff's tonnage figures were too high.

The first race on the track was held on July 4, 1971. Defendant testified that in 1974 "we were enjoined from operating the speedway."[5]

On December 6, 1971, Speedway, by its president, M. C. Miller, executed two promissory notes in favor of plaintiff. One was in the principal amount of $48,880.60, the balance then due plaintiff under Exhibit 1 for the race track. This note called for monthly payments of $1,000 together with interest at the rate of eight percent per annum payable monthly. The other note was in the amount of $5,880.60, the balance then due plaintiff under Exhibit 2 for the pit area and road. This note called for monthly principal and interest (eight percent) payments but the amount of the principal payment was left blank.

Plaintiff, who had a fourth grade education, testified that he did not know of the existence of Speedway as a corporation until Miller, for the corporation, signed the notes in December, 1971.

■ Defendant's first point makes the erroneous assumption that plaintiff's petition is limited to the theory of quantum meruit. The fact is that the petition pleaded execution by defendant of Ex. 1 and Ex. 2. Both exhibits were attached to the petition, thereby becoming "a part thereof for all purposes." Rule 55.12; see also Rule 55.22. The petition further pleaded that plaintiff performed the work and furnished the materials "described in [Ex. 1 and Ex. 2]." The tonnage rates prescribed by the two exhibits were also specifically pleaded and the petition stated that the defendant "by the [exhibits]" agreed to pay plaintiff those rates. The petition further stated that the total amount due for "the work as described in [Ex. 1 and Ex. 2]" was $98,-679.20 prior to the crediting of payments. Plaintiff's evidence supported the allega-

---

4. Although defendant's evidence showed that the four payments were "from Salvage," only three of the checks bore the name "Miller's Auto Salvage." The other bore the name "Miller Auto Sales," which has the same address and telephone number as Salvage. The record

contains no information concerning Miller Auto Sales.

5. See *Lee v. Rolla Speedway, Inc.,* 539 S.W.2d 627 (Mo.App.1976) where the judgment of the trial court, permanently enjoining the operation of the race track, was affirmed.

tions of the petition and included proof of the execution by the defendant of the two exhibits and full performance by the plaintiff of the work therein described.

Quantum meruit means "as much as he has deserved" and the burden is on the plaintiff to plead and prove that his charges were fair and reasonable. *Williams v. Cass,* 372 S.W.2d 156, 161[10, 11] (Mo. App.1963). "Bluntly put, the failure to prove the reasonable value of services rendered or materials furnished is fatal to recovery therefor in quantum meruit." *Williams,* supra, at p. 161. The instant petition, although stating that the contractual rates were reasonable, was based, at least in part, upon express written contract. Moreover, "[i]f the petition contains averments which, if proved, would entitle plaintiff to recover either on an express contract or on quantum meruit, and if it is impossible to say definitely whether plaintiff is counting on one or the other, he may be permitted to recover upon whichever of the two theories his evidence may warrant [authorities cited] and the allegations unnecessary to statement of the cause of action, on which recovery properly may be had, may be treated as surplusage and disregarded." *Emerson v. Treadway,* 270 S.W.2d 614, 621[14] (Mo.App.1954).

The theme of defendant's argument under his first point is that Speedway, and not defendant individually, received the benefit of plaintiff's work; that plaintiff accepted checks from Speedway; and that plaintiff accepted two notes from Speedway "in substitution of his account." Defendant argues, in effect, that the liability to plaintiff is that of Speedway and not that of defendant.

The record contains several facts tending to show, or showing, that plaintiff's agreement was with defendant individually and not with Speedway. Ex. 1 and Ex. 2 were signed by defendant individually and made no mention of Speedway. Defendant requested plaintiff to do the work which defendant described as "my job." Plaintiff testified that the work was requested by defendant and that defendant never "mentioned anything else"—"Best of my knowledge it was just Mr. Miller." Defendant himself made payments, by cash and by check, some of the latter coming from Salvage of which defendant was the sole proprietor. Such payments both preceded and followed the execution of Speedway's notes. Salvage also made payments in the form of automotive parts. Plaintiff testified he did not know of the existence of Speedway until the notes were signed, months after the work had been completed. Plaintiff's initial bill to defendant (which produced an $18,000 payment by Speedway on June 8, 1971) was directed to M. C. Miller.

Of compelling significance on the issue of whether the liability was that of defendant or of Speedway is the manner in which Ex. 1 and Ex. 2 were signed.

"[O]ne who acts as agent for another in making a contract is liable individually if, at the time of making such contract, he fails to disclose his agency and the identity of his principal." *Lange v. Baker,* 377 S.W.2d 5, 9[6] (Mo.App.1964). "If [an agent] would avoid personal liability [on the contract] the duty is upon him to disclose his principal, and not on the party with whom he deals to discover the principal." *Banjo v. Wacker,* 251 S.W. 456, 458[2] (Mo. App.1923). See also *A. A. Electric Machinery Co. v. Block,* 193 S.W.2d 631, 636[9, 10] (Mo.App.1946); *M. F. A. Cooperative Ass'n of Mansfield v. Murray,* 365 S.W.2d 279, 285[5] (Mo.App.1963).

"One bringing an action upon a contract has the burden of showing that the other is a party to it. This initial burden is satisfied if the plaintiff proves that the defendant has made a promise, the form of which does not indicate that it was given as agent. The defendant then has the burden of going forward if he wishes to show that his promise was made only as an agent and that this should have been so understood." Restatement (Second) of Agency § 320, p. 68, Comment b. Comment c, on the same page, says: ". . . [T]he fact that the wording of the contract is such that unless the agent is a party no one is tends to indicate that the agent is a party."

Defendant adduced no evidence to the effect that he or anyone else had informed plaintiff of Speedway's interest in the construction of the race track or even of Speedway's corporate existence.

Defendant seeks refuge in evidence which, he argues, tends to show the agreement was that of Speedway and not his individually. He points to these facts: some payments were made by Speedway check; Speedway gave the two notes on December 6, 1971, to plaintiff; Speedway, on its federal income tax returns for the years 1971 through 1974, claimed depreciation of the race track as a deduction; Speedway, and not defendant, was the lessee of the land on which the race track was constructed; other materialmen had sent bills to Speedway and not to defendant.

■ There was no evidence that plaintiff had any knowledge of the contents of Speedway's income tax returns. There was no evidence that plaintiff had any knowledge of the manner in which other materialmen framed their bills. There was no evidence that plaintiff had knowledge that Speedway, and not defendant, was the lessee, although there was evidence that plaintiff knew that the race track was under lease. Plaintiff did know that some payments were made by Speedway checks and did accept the two notes of Speedway. Such knowledge and such acceptance, on the instant record, are not fatal to his action against defendant.

"[T]he acceptance of a note of either a debtor or a third person does not constitute payment of a contemporaneous or pre-existing debt, unless there is an express agreement to that effect between the parties to the transaction." *Connersville Casket Company v. Gist,* 355 S.W.2d 374, 376[2] (Mo. App.1962). See also *Security Trust Co. v. Sherwood Homes, Inc.,* 436 S.W.2d 776, 779[6] (Mo.App.1968); 60 Am.Jur.2d Payment § 62, p. 654.

Defendant argues that plaintiff accepted the two notes from Speedway "in substitution for his account." A similar argument was made, unavailingly, in *Relles v. Wines,* 416 S.W.2d 19 (Mo.App.1967), where plain-

tiff lent some money to defendant who was president of Candeb Corporation. After the loan was made, and after defendant had made one payment to plaintiff, other payments were made by corporate checks and plaintiff accepted the note of the corporation for the unpaid balance. The corporate note was not issued until 10 months after the making of the loan.

In rejecting defendant's argument that plaintiff's acceptance of the corporate note had the effect of releasing the defendant as the original debtor the court said, at p. 22:

"This defense of novation must fail, for several reasons. It was an affirmative defense of release but was not pleaded as required by [Rule 55.08] . . . .. Nor was there clear and convincing evidence of plaintiff's release of defendant as his original debtor and his acceptance of Candeb as his new creditor [sic], all that being required for a novation. *Negbauer v. Fogle Construction Co.,* Mo.App., 53 S.W.2d 346[8, 9]. If further reason be needed for denying the defense of novation, we point to its utter inconsistency. This, because defendant contended that from the inception of the loan it was Candeb, not he, who promised to pay the plaintiff."

In the instant case defendant did not plead the defense of novation. Far from offering any "clear and convincing" evidence of plaintiff's release of defendant as his original debtor and plaintiff's acceptance of Speedway as his new debtor, defendant offered no evidence at all to that effect. Defendant's answer denied that he, individually, had initially contracted for the work. The same "utter inconsistency" which the court found in *Relles* is present here.

It should be pointed out that defendant's theory of "substitution," a theory belatedly advanced and at war with that presented to the trial court, is also inconsistent with defendant's conduct in making payments himself, at least through Salvage, after the giving of the Speedway notes.

"The controlling element in determining whether a novation has been accomplished

is the intention of the parties. . . . A novation is never presumed. . . . The burden of proof rests upon him who asserts there has been a novation." *W. Crawford Smith, Inc. v. Watkins,* 425 S.W.2d 276, 279 (Mo.App.1968).

■ The acceptance by plaintiff of corporate checks in partial payment of the indebtedness did not exonerate defendant from his individual liability, *A. A. Electric Machinery Co. v. Block,* 193 S.W.2d 631, 636[11, 12] (Mo.App.1946), *Jahncke Service v. Heaslip,* 76 So.2d 463, 465[1] (La.App. 1954), *Matsko v. Dally,* 49 Wash. 370, 301 P.2d 1074, 1077[7, 8] (1956), 66 C.J.S. Novation § 18e, p. 703, although payments made by corporate checks had the effect of discharging pro tanto defendant's original debt. 70 C.J.S. Payment § 29, p. 240.

The trial court was justified in finding that the indebtedness to plaintiff for labor and material furnished in connection with the construction of the race track was that of defendant individually. Under his first point defendant cites cases which, he argues, would support a finding of liability on the part of Speedway to plaintiff. Speedway is not a party and the issue of its liability need not be explored. The evidence established defendant's liability. Defendant's first point has no merit.

Defendant's second point is stated as follows: "The trial court erred in rendering judgment for plaintiff and against defendant on plaintiff's theory of quantum meruit in the amount of $17,772.75 because under plaintiff's theory he could collect only the contract price and thus all payment of defendant for interest should have been applied to reduce the balance allegedly due."

■ This point proceeds on two erroneous assumptions. First, as discussed under point one, the petition was based upon express written contract and not upon quantum meruit. Second, defendant mistakenly assumes that interest is not recoverable in an action based on quantum meruit. To the effect that interest is recoverable in such actions see *Mid-West Engineering & Const. Co. v. Campagna,* 421 S.W.2d 229, 234[6, 7]

(Mo.1967); *Burger v.·Wood,* 446 S.W.2d 436, 443[10] (Mo.App.1969); *Laughlin v. Boatmen's Nat. Bank of St. Louis,* 354 Mo. 467, 189 S.W.2d 974, 978[12], 979[15, 19] (1945).

The two notes of Speedway were interest-bearing and Speedway's payments on the notes included a portion for principal and a portion for interest. Plaintiff's petition gave defendant full credit for that portion of the note payments allocated against the principal of each note. Plaintiff did not give defendant credit, as against the principal of the original indebtedness, for the interest portion of the note payments. This, says defendant, was improper.

■ Defendant's answer did not plead payment, although payment is an affirmative defense. Rule 55.08. Indeed, defendant's answer denied those portions of the petition which pleaded that payments had been made by defendant. It will be recalled that defendant individually, and through Salvage, made payments in addition to the payments made by Speedway.

With regard to the Speedway notes, plaintiff testified, without objection, as follows:

"Q. And these were taken so that you could draw interest on the amount that was owed to you?

"A. That we agreed on, yes, sir."

According to *defendant's* brief, in December 1971, when the two Speedway notes were executed "the balance due for the work of plaintiff amounted to $54,761.20." The face amounts of the two notes equalled that figure.

One of *defendant's* exhibits, Ex. SS, was entitled "record of payments made by M. C. Miller." Ex. SS consists of three pages, the first two pages dealing with the payments on the larger note and the third page dealing with payments on the smaller note. According to the exhibit, interest was paid monthly, with few exceptions, on the larger note, from January 1, 1972, to December 1974. With respect to the smaller note, the exhibit also shows payments on principal and payments of interest. Ex. SS also

shows that the balance due on the larger note, as of December 6, 1974, was $15,880.60. It shows the balance due on the smaller note was $1,892.15. After each balance appear the words "plus interest." The total of the two balances is $17,772.75, which was the amount sought by the petition and was also the amount of the judgment.[6]

It should be observed that Ex. SS describes all payments after January 1, 1972, as being "made by M. C. Miller," although most of them were in fact made by the corporate check of Speedway. Some of the checks of Speedway and Salvage, introduced into evidence by defendant, bore such legends as "interest," "interest on note number 2," and "March interest."

Defendant has cited no authority in support of his contention that the interest portion of the note payments should have been credited against the principal of the original indebtedness.

Section 400.3–802 reads, in part:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation . . . (b) . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored, action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation."

 The Speedway notes were instruments. § 400.3–102(1)(e); § 400.3–104.

Section 400.3–802(1)(b) is the counterpart of Uniform Commercial Code § 3–802(1)(b) which, according to 60 Am.Jur.2d Payment § 62, p. 654, applies to the taking of a third person's negotiable note for an existing debt.

 It should be observed that § 400.3–802 opens with the language: *"Unless otherwise agreed."* [7] The evidence which has been set forth in connection with this discussion of defendant's second point, including plaintiff's testimony concerning the reason for the taking of the note and defendant's treatment of the payments as shown by Ex. SS, justified the trial court in finding that the agreement of the parties was that defendant was not to be given credit, as against the principal of the original indebtedness, for the interest portion of the note payments. Whether § 400.3–802 (ignoring the language "unless otherwise agreed") would lead to the same conclusion need not be considered.[8]

Defendant's second point has no merit.

The judgment is affirmed.

All concur.

6. Although the petition sought pre-judgment interest on the amount sued for, commencing from the date of its filing, the trial court made no such award. On this appeal by defendant, plaintiff does not claim that the judgment was inadequate.

7. Does this combination of three simple words mean what it plainly says? With its lust for lucidity, the Uniform Commercial Code commands the reader to make additional stops at § 400.1–102(3) and (4) and § 400.1–201(3). The latter statute has, helpfully, three internal citations. Such circumlocution must inspire the envy of the drafters of the I.R.C. Happily the question seems to receive an affirmative answer—at least usually.

8. North Carolina, GS § 25–3–802, added the following at the end of subsection (1)(b) of U.C.C. § 3–802: "to the extent of his discharge on the instrument." Query: Was that a significant amendment or merely a clarification?