**Jan H. INGRAM, Plaintiff-Respondent,**

v.

**David G. LUPO, Defendant-Appellant.**

No. 51450.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 10, 1987.

Motion for Rehearing and/or Transfer
Denied March 11, 1987.

Application to Transfer Denied
April 14, 1987.

Bradley James Bakula, St. Louis, for de-
fendant-appellant.

Arthur Friedman, St. Louis, for plaintiff-respondent.

SIMEONE, Senior Judge.

## I

Plaintiff-respondent, Jan H. Ingram, is a certified court reporter in one of the divisions of the Circuit Court of the City of St. Louis. Defendant-appellant, David G. Lupo, is an experienced attorney in good standing and is a member of The Missouri Bar practicing law principally in the Metropolitan area of St. Louis.

This is an appeal by the defendant from a judgment of the circuit court of the City of St. Louis against him personally which awarded plaintiff $442 for costs of preparing a transcript of certain hearings held in the court in which the plaintiff is the reporter.

The issue which must be resolved in this case is whether under the specific facts, an attorney who requests, on behalf of his client, a transcript of trial proceedings expressly undertook to reimburse the court reporter for the costs of such transcript. The issue is a narrow one, and it is not necessary for the disposition of this appeal to address issues of broader implication. The specific issue is whether, under the circumstances here, the defendant-attorney is personally obligated, together with his client, to the court reporter for the costs of transcription, so that the reporter may seek recovery against the attorney. There is no question that an attorney may bind his client for such services, or that the client is ultimately responsible for the transcript, but the specific question involves the personal liability of the attorney.

For reasons hereinafter stated, we affirm the judgment for the plaintiff.

## II

The facts are not complex, but the legal issues are not easily resolved. A resolution necessarily involves the balancing of the interests of two essential components of the judicial system, and the principles of the law of "agency," as they bear upon the facts in this case.

Mr. Lupo was employed as an attorney to represent the interests of Benjamin Thomas in an equitable proceeding filed in the Circuit Court of the City of St. Louis in a cause entitled *State ex rel. Thomas v. Goins*, # 844–00091. Hearings in that case were held sporadically in 1984 before a division of the circuit court, and Ms. Ingram was the court reporter.

On December 14, 1984, Mr. Lupo, on his and his partner's stationery, wrote to Ms. Ingram, referring to the *Thomas* case and stated:

"Would you please provide us with a transcript of the hearing we have had in the above styled cause. It is important that we have the transcript before January 17, 1985. We have a hearing set on that date.

The dates of the hearings are as follows:

\* \* \* \* \* \*

We shall be happy to remit the costs. Your immediate attention will be appreciated."

On January 2, 1985, Lupo wrote another letter on his stationery to Ms. Ingram:

"Enclosed is the check for $300.00 which you requested.[1]

"Would you please commence immediately on transcribing the testimony for the following days:....

"As you know, there will be a hearing on January 17, 1985, and even if you could get one or two days completed, I would appreciate having the transcript of whatever you complete for that hearing."

"Your immediate attention will be appreciated."

The $300 check was drawn on a local bank by an employee of St. Louis Times, Inc. (Mr. Thomas' corporation), and was not Mr. Lupo's personal check.

At no time did Mr. Lupo expressly promise to "pay" the costs of transcription. And from the correspondence and the hearings held in the equity division, Ms. Ingram was aware that Mr. Lupo was acting as an

1. This was the amount Ms. Ingram requested as an initial deposit.

attorney for Benjamin Thomas. She so testified. She also testified that there was nothing on the $300 check which identified Lupo's law firm to give an indication that the check was from Lupo personally or his law firm.

Ms. Ingram testified at the *de novo* hearing that she did prepare the transcript and "moved other cases out of the way so that my typist could work on this and get it to him as quickly as possible. It was rather extensive and I think somewhere around 370 pages...."

In due time the transcripts were completed, and on February 20, 1985, Lupo wrote his client, Thomas, informing him that the "court reporter called today" and the transcript of the hearing "we have had" in court is ready. Lupo reminded Mr. Thomas that he had previously paid $300 to Ms. Ingram as an initial deposit, and "that the balance now due is $442.00." "Make check payable to Jan Ingram, Court Reporter and send the check to this [Lupo's] office." The payment was never made.

On March 27, 1985, defendant again wrote to Ms. Ingram informing her that "[W]e have withdrawn as attorneys for Mr. Benjamin Thomas as of March 4, 1985." He also informed her that another attorney has "entered his appearance" and that "I suggest you contact him."

Eventually, and on October 4, 1985, Ms. Ingram filed a petition in the "small claims court" against Lupo seeking recovery of the $442.00, alleging in her petition that "Mr. Lupo ordered the transcript of an equity proceeding which was, upon his request, completed by me, but has failed after repeated requests, to pay the balance due me of $442.00."

Later that month, the "small claims court," after a hearing, found in favor of the plaintiff and entered judgment against Lupo for the amount requested. Lupo timely made application for a trial *de novo* in the circuit court. Lupo moved to dismiss the action and moved for summary judgment. On March 5, 1986, the circuit court denied the motion for summary judgment and held an evidentiary hearing at which Ms. Ingram was the only one to testify.

Mr. Lupo did not testify. Following the hearing, the court entered a judgment in favor of the "plaintiff, Jan Ingram, and against defendant, David Lupo in the sum of $442.00 and costs of court."

From this judgment, defendant appeals.

In this court, plaintiff moved to dismiss the appeal and also moved for damages for filing a "frivolous appeal." These motions as ruled upon by the Chief Judge were "taken with the case." Both motions are now denied.

On appeal, appellant contends that the trial court erroneously interpreted and applied the law in entering judgment in favor of the plaintiff, and that the judgment was against the weight of the evidence for the reason that "an attorney, being an agent for a disclosed principle" [sic], the client is personally liable for expenses incurred for the preparation of a transcript. Appellant contends that the court reporter was "fully aware" of the relationship between attorney and client and "fully aware that the 'disclosed principle' [sic] was paying for her services."

He argues that an attorney is an agent for the client, that an attorney has traditionally been regarded as an agent of his client and that the "expenses of a lawsuit are expenses of the client"; that, "where the services of a third person is needful to the better conduct of the cause, such as a stenographer or a printer, that service ... is prima facie at the expense of the client."

Respondent, on the other hand, relies upon the standards of review set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). She contends that the evidence established an "agreement" between the plaintiff and defendant, and that there is an exception to the principle which holds that where the "attorney agrees" or "expressly undertakes" to pay for the services rendered by the reporter, the attorney is personally liable. Plaintiff contends that there was such an undertaking here.

III

Appellate review of this cause is governed by the standards set forth in *Mur-*

*phy v. Carron, supra.* Under those standards the judgment appealed from must be sustained unless: (1) there is no substantial evidence to support it, (2) unless it is against the weight of the evidence, unless it (3) erroneously declares the law or (4) erroneously applies the law. *Id.* at 32; *McDowell v. Miller,* 557 S.W.2d 266, 267 (Mo.App.1977).

## IV

While the facts are relatively simple, the legal principles involved in this factual situation are many and varied. There are a number of principles which are involved—agency, the status and duties of an attorney in relation to the client and third persons; the liability of an attorney for expenses of preparing a transcript; liability of an "agent" for a "disclosed principal"; the liability of an "agent" of a disclosed principal who "expressly undertakes" a promise made by the "agent" of a disclosed principal; the practice and custom in the local community; and the efficient and smooth operation of the justice system.

■■■ There are certain well-settled principles relating to the law of agency: (1) an agent of a disclosed principal can bind his principal when the agent acts within the scope of his authority, (2) a principal is liable to a third party for an act of his agent which is within the scope of the agent's authority, and (3) the agent of a disclosed principal is not a party to the contract and is not liable to a third party unless the agent of a disclosed principal agrees or undertakes the obligation of the contract.

These and other pertinent principles are recognized in various sources and authorities.

The Restatement (Second) of Agency, § 1 states that:

Agency is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Comment (e) states that "agent" is a word to describe a person authorized by another to act on his account and under his control. The comment continues—the attorney-at-law and other similar persons are "agents," although as to their physical activities they are "independent contractors." They must be "contrasted" with others, such as clerks, train conductors, and those who conduct transactions with third persons but who fall within the category of "servants."

Section 385 of the Restatement deals with the duties of the agent toward the principal. Comment (a) states:

[U]nless the contract of agency prescribes the manner of performance and the extent of obedience to be required, it is generally understood that the employer will not interfere with the method of conducting proceedings which are customarily left in the control of an agent. Thus, in the absence of a special agreement, although he is subject to the duty stated in Subsection (2), an attorney is in complete charge of the minutiae of court proceedings ... [But] servants are under close control by the master with regard to the manner in which they perform their work.

These principles are in accord with the modern concept embodied in the new Rules of Professional Conduct relating to attorneys. The preamble of Rule 4, Supreme Court Rules states:

A lawyer is a representative[2] of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.

The Comment to Rule 1.2 of Rule 4 states that both the lawyer and the client have responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes served by legal representation within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client has the right to consult with the lawyer about the means to be used in pursuing those objectives. In questions of

---

**2.** Notice the word used is "representative" not    "agent."

means, the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred. Rule 1.2, Comment—Scope of Representation.

Another general principle embodied in the Restatement and followed in judicial decisions, including Missouri, is the rule that "unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency, § 320. One who purports to contract on behalf of a designated person does not manifest by this that he is making a contract on his own account. *Id.,* Comment (a). Only where "he so manifests does the agent become a party to a contract which he makes for the principal." [3] See also H. Reuschlein & W. Gregory, *Agency and Partnership,* ch. 11, § 118 (1979).

Appellant relies on these judicial authorities which uphold these well-settled principles. *Potter v. Chaney,* 290 S.W.2d 44, 46 (Ky.App.1956)—agent not liable "generally speaking"; *Hamilton Music v. Gordon A. Gundaker Real Est.,* 666 S.W.2d 840, 845 (Mo.App.1984)—third party "generally" has no action against agent in a disclosed principal situation; *Bridges v. Rice,* 99 S.W.2d 531, 534 (Mo.App.1937)—"presumption" of binding principal; and *MacDougal v. Birdie Co.,* 20 A.D.2d 175, 245 N.Y.S.2d 460, 461 (S.Ct.1963)—no liability on part of agent unless evidence of intention to supersede the personal liability of agent.[4]

Only a few early decisions in Missouri deal with the liability of an attorney for court related services. *Mendenhall v. Sherman,* 193 Mo.App. 684, 187 S.W. 271 (1916); *Inland Printing & Binding Co. v. Elam,* 240 S.W. 823 (Mo.App.1922) and

*Cameron Sun v. McAnaw,* 72 Mo.App. 196 (1897).

In *Mendenhall, supra,* the plaintiff, a printer of abstracts and briefs, brought action against an attorney for services rendered. The facts showed that the plaintiff's "solicitor" [salesman] saw from court records that a certain case was pending in the court of appeals in Kansas City, and that the defendant-attorney was counsel for appellant. The solicitor "sought out" the defendant-attorney, solicited and obtained the contract for the printing. Nothing was said about who was to be charged. It was charged to the attorney although he did not know it. The printing was done and the abstracts and briefs were delivered. Plaintiff demanded the money from the attorney who referred him to his client. The court of appeals held that the attorney was not liable for the services. The court relied on the rule that an attorney acts primarily for his clients and that the rule is that when a person contracts with an agent of a disclosed principal, the principal alone is responsible in the absence of evidence that the agent intended to bind himself.

In *Inland Printing, supra,* the defendant, an attorney "went to plaintiff's place of business" and asked him to print the abstract of record in a case which he had. The work was done and the plaintiff charged the attorney. The court relied on *Mendenhall* and held that if the attorney is known to the printer as being the client's attorney, he is not liable unless he agrees to be personally bound.

However, in *Cameron Sun v. McAnaw,* 72 Mo.App. 196 (1897), the court of appeals held that where the attorney "agrees" with a printer to pay for printing briefs for a client, and the printer relies thereon, the attorney is liable.[5]

---

**3.** The Comment to § 320 states this is true although the agent uses such an expression as, "I will sell."

**4.** He also relies on the fact that the $300 deposit check drawn on the Thomas Corporation to show that the third person was dealing with the principal (the client) and not the agent (the attorney), citing *Potter v. Chaney, supra. Cf.*

*McDowell v. Miller,* 557 S.W.2d 266, 271 (Mo. App.1977).

**5.** *Cameron Sun* was discussed in *Mendenhall* —"Of course, an agent may contract as a principal and if that be shown by the evidence, he will be held as such; and he may do this even where the principal is known. So we held in *Cameron Sun v. McAnaw,* 72 Mo.App. 196.... [T]he vital distinction is that in that case the lawyer 'ex-

These few early Missouri decisions are the only ones research has uncovered.

■ Recently, this court had occasion to examine these principles of the law of agency as to the personal liability of an agent. We held, in a non-attorney situation, that although the general rule is that where a third party and an agent for a disclosed principal make a contract, the agent is not personally liable, this rule of liability may give way if the parties to the contract agree upon the personal liability of the agent. *Moore v. Seabaugh*, 684 S.W.2d 492 (Mo.App.1984). In that case, appellants Seabaugh and Weiss entered into a "management contract" with Pioneer Orchards Co. and its president, Beggs, wherein they agreed to aid in the management and control of Pioneer's financial affairs. Some months later, plaintiff, Handy Moore, an orchard owner, entered into a marketing contract with Pioneer Orchards, Beggs, Seabaugh and Weiss for the processing, packaging and sale of his apples. Later, Moore sued all defendants for a breach of the marketing contract. The trial court found in favor of the plaintiff and against all defendants. Seabaugh and Weiss raised, in this court, the issue that they could not be personally bound because they were merely agents of disclosed principals—Pioneer Orchards and Beggs—and that Moore, the plaintiff, knew that they had signed the contract with Pioneer and Beggs, and was aware that they were acting as agents. This court, however, while recognizing the general rule that an agent for a disclosed principal is not liable, affirmed the personal liability of the agents of a disclosed principal, and held that the "trial court could infer" that the defendants agreed to be personally liable on the contract. "An agent incurs personal liability regardless of disclosure of the principal, where the agent contracts in his own name, rather than on behalf of his principal." 684 S.W.2d at 494. We said that under the facts, "we cannot hold the trial court erred in finding the appellants [agents] personally liable." 684 S.W.2d at 495.

We believe the facts of the case at bar are more akin to *Cameron Sun* and *Seabaugh*, than they are to *Mendenhall* and *Inland Printing, supra*. We hold, for this and other reasons to be developed, that the trial court did not err in finding the defendant-appellant personally liable for the costs of the transcript prepared by Ms. Ingram.

■ The trial court, in reviewing the letters, exhibits and hearing testimony could well infer that the defendant agreed to be jointly and severally responsible for the costs of the transcript. This issue presented a question for the trier of fact and was resolved by it. "Whether the agent of a disclosed principal binds himself depends upon the intention of the parties, which must be gathered from the facts and circumstances." *Bridges v. Rice*, 99 S.W.2d at 534. In the letter of December 14, 1984, the defendant requested the transcript of the hearings—"Would you please provide *us* with a transcript"; "it is important that *we* have the transcript before January 17, 1985"; "*We* shall be happy to remit the costs." In the January 2 letter, the defendant wrote, "*I* would appreciate having the transcript ..."; plaintiff testified that her "request [to prepare the transcript] came from Mr. Lupo." These facts show that at the minimum, the attorney, having given no indication that he intended not to be personally responsible, undertook jointly and severally to be responsible for the costs of the transcript and that he would "remit" [6] the costs to the plaintiff.

pressly undertook' and promised to pay for the printing of the briefs, if plaintiff would print them. In this case, no such contract was shown." 187 S.W. at 272.

**6.** "To send back," "to submit judgment, decision, or action," "to send money to a person or place especially in payment of a demand, account or draft"; "to send money (as in payment)." Webster's New Collegiate Dictionary (1973). The word "remit" may take on different meanings in different contexts. It may mean "send" or it may mean "pay." All scholars agree that the English language is not precise. Words take on different meanings in different contexts. "Remit" in one context may well mean something different in another context. The hypothetical factual situation put at oral argument, was if an attorney for the defendant settles a case, and writes to plaintiff's attorney "we will remit the amount of the settlement," would defendant's attorney be personally liable for the amount of

■ Under the precise facts of this case, we find, under the principles of appellate review, no error on the part of the trial court awarding judgment in the amount of $442 in favor of the court reporter against the attorney. The facts and correspondence show that the attorney said "we" shall be happy to pay your costs of the transcript. While the "royal" or "presidential" "we" is often used in the sense of referring to the principal or "master," in the context of this case, it can reasonably be construed to mean that the client *or* the attorney promises to pay for the costs of a transcript for appeal, in a manner akin to a surety, rather than a guarantor.

We therefore do no violence to the rule that an agent of a disclosed principal is generally not liable on a contract. We hold only, as we did in *Seabaugh, supra* that the trial court did not err in finding the agent of a disclosed principal liable and that the trial court could reasonably hold that defendant expressly agreed to be personally liable for the cost of the transcript.

## V

■ There are other compelling reasons. In addition to our finding that under the facts the trial court could reasonably hold that the defendant undertook and agreed to "remit" the costs of the transcript, there are certain other and compelling reasons why the trial court did not err. The facts of this case deal only with the relationship of an attorney and court-related personnel. That is a unique relation which enhances the smooth functioning of the judicial process and is the necessary lubricant for the machinery of justice. Each member of the process has his or her unique role to play.

First, we believe that under the facts of this case, the principles embodied in *Mendenhall* and *Inland Printing* do not comport with the modern principles relating to the relationship between an attorney and court-related personnel and the scope of an attorney's representation in this era of drastic changes in the practice of law. The principles embodied in those cases as they relate to attorneys are inconsistent with local custom and practice, and our conclusion is more consistent with the more modern decisions. *Mendenhall* was a decision shaded by its facts. *Inland Printing* was decided in a different era, and under different customs and practices than now exist in the locality and among relationships of attorneys, judges and court-personnel.

Second, an attorney is often referred to as an "agent" of the client whom he represents, and for many purposes and in many respects he is. The attorney, in accordance with professional responsibilities, is duty-bound to follow the dictates of the client and represent the client with zeal within the bounds of the law. The client is the master of the lawsuit and is ultimately responsible for the costs of litigation. But in many other respects, the attorney is more than an "agent" of the client or a mere amanuensis. While the client is the master of the lawsuit, the attorney, in accordance with his professional duties, is the strategist, and as such is empowered to perform the many details of litigation. Acting as such, the attorney as a practical matter does not turn to the client for authority to carry out each and every detail incident to litigation. In today's legal world and today's complex litigation, the attorney acts in his relationship with court personnel as an "independent contractor." The Restatement refers to the attorney as such and distinguishes that profession from the ordinary relation of "employer and employee."

Under our system of litigation, and in this context, an attorney is more than a mere agent. He or she is governed by higher principles than those relating to the ordinary, common law principles of "master and servant." In that sense, the attor-

the settlement? No one could seriously contend that he would. That is an entirely different situation. The third party does not "look" to the attorney for the amount of the settlement. A word is not like a crystal—reminding us of Holmes' famous words: "A word is not a crys-

tal, transparent and unchanged, it is the skin of living thought and may vary greatly in color and content according to the circumstances and time in which it is used. *Towne v. Eisner,* 245 U.S. 418, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918).

ney has authority to act as the legal strategist, so that judges, and court personnel, including the court reporter have a right and tendency to "look" to the attorney for the many acts relating to litigation.

Third, this view of the role of an attorney in our contemporary system is also quite consistent with the many legal precedents and principles that hold that the client is bound by the actions of the attorney before, during and after trial. A client is bound if the attorney waives venue, or fails to object to certain testimony, or fails to file notice of appeal on time. Consistent with this high responsibility, the law recognizes that for the attorney's important role in the litigation process, the attorney is given a preferred status as an "agent." The attorney is one of the few "occupations" to be given a "lien" or "charge" on the client's "cause of action" and on the documents and papers in his possession, which in reality belong to the client. See §§ 484.130, 484.140, R.S.Mo.1986.

Fourth, our conclusion and holding are also consistent with the long-standing practices which have existed and still exist between the bar and court personnel in this community. As a matter of local practice, it has been, and is, the traditional and customary practice, which almost rises to the level of an implied-in-fact contract, that the court reporter "looks" to the attorney for direction, the portions of a trial which are to be transcribed, and the costs of transcription. The practice has traditionally been, and still continues to be that the reporter "looks" to the attorney who in turn "looks" to the client, for the costs of a transcript. This does not mean that the client is absolved from liability. It is the client who is ultimately responsible.

We believe that this traditional practice and custom is indeed a salutary one for the smooth and efficient operation of the adversary process and the judicial system. Without it, more litigation, bad feeling and more complex problems (of which we have enough) would develop. We are authorized to take judicial notice of legal practices or conditions. *Moore v. St. Louis S.W. Ry. Co.*, 301 S.W.2d 395, 404 (Mo.App.1957);

*Cook v. Bolin*, 296 S.W.2d 181, 187–88 (Mo. App.1956).

Fifth and finally, our conclusion is buttressed by numerous modern precedents and judicial authority in other jurisdictions. Many modern decisions now take the position that an attorney ordering a transcript in connection with litigation is ordinarily to be treated as a principal, so that even when he is known to be an attorney acting for a particular client, he is personally liable in the absence of an express disclaimer of such responsibility. 7 Am.Jur.2d, Attorneys at Law, § 153, p. 212; *Monick v. Melnicoff*, 144 A.2d 381 (D.C.Mun.App. 1958)—attorney liable for ordering transcript where nothing is said regarding whom reporter shall look to; *Burt v. Gahan*, 351 Mass. 340, 220 N.E.2d 817, 15 ALR 3d 527 (1966)—attorney liable for stenographic services because in a broad sense, there is much more involved than mere agency and no hardship since attorney may exclude himself from liability by mere statement; *Batavia Times Pub. Co. v. Hall*, 129 Misc. 197, 221 N.Y.S. 89 (1927) —when attorney asks printer to print brief, prima facie he must expect to be called upon to pay; Annot. 15 ALR.3d 531, 555.

In *Judd & Detweiler, Inc. v. Gittings*, 43 App.D.C. 304, 310–311 (1915), it was held that the just and equitable rule is that in the absence of express notice to the contrary, court officials may safely regard themselves as dealing with the attorney, instead of with the client.

While we recognize there are decisions otherwise, we believe the above decisions represent the better view.

## VI

In sum, our conclusion, we believe, is a reasonable one; it is consistent with the cooperative roles that the attorney and the court reporter play in the litigation process; it is consistent with the local practice and customs in this community; it is consistent with precedent and it is consistent with the facts and the expressed undertaking made

by the defendant in this case. We therefore affirm.

The judgment is affirmed.

CRIST and SIMON, JJ., concur.