■ URBAN COURT REPORTING, INC., Respondent, v ARNOLD DAVIS, Appellant.—

Plaintiff, a court reporting service which performed services for defendant attorney in connection with depositions in two unrelated lawsuits in which defendant appeared as attorney of record for one of the parties, seeks in this action to recover the amount of its allegedly unpaid services. Defendant moved for summary judgment dismissing the complaint, asserting that, in securing plaintiff's services, he had acted as an agent for a disclosed principal and that plaintiff must therefore look to defendant's clients for payment rather than to defendant. Civil Court held that the papers raised factual issues, including whether defendant agreed to be personally obligated to plaintiff for services rendered, which precluded summary judgment. The Appellate Term affirmed. We agree with the denial of summary judgment and accordingly affirm.

The law is clear that where the attorney of record contracts for stenographic services as the agent of his client and the fact of his agency is known to the party with whom he contracts, the attorney cannot be held responsible for the services in the absence of an undertaking to assume such responsibility. *(Bonynge v Field,* 81 NY 159; *see also, Matter of May,* 27 NY2d 529.) Plaintiff's president states that plaintiff was not instructed to bill defendant's client for the services it rendered and therefore billed defendant and that, when he made demands for payment, he was "always told that the bill would be taken care of but it may be a slow pay." We think

this presents a question of fact as to whether the attorney undertook to assume responsibility for payment of plaintiff's services.

We add that, contrary authority notwithstanding *(see, e.g., Bonynge v Field, supra; Matter of May, supra; Riley v Tull,* 186 App Div 805), we think an attorney who, on his client's behalf, obtains goods or services in connection with litigation should be held personally liable unless the attorney expressly disclaims such responsibility. *(See, Monick v Melnicoff,* 144 A2d 381 [Mun Ct App DC]; *Burt v Gahan,* 351 Mass 340, 220 NE2d 817; *Ingram v Lupo,* 726 SW2d 791 [Mo App].) As aptly stated in *Beizer v Goldberg,* (NYLJ, June 10, 1988, at 28, cols 2, 4 [Goldstein, J.]), which adhered to the prevailing rule while criticizing it as anachronistic, "[i]t is both illogical and unnecessary to compel the reporter to proceed against a client he or she has not dealt with, probably never saw[,] undoubtedly, would have difficulty locating" and, we add, whose credit standing is probably unknown. "This burden may more conveniently and appropriately be placed upon the attorney". *(Supra,* at col 4.) It seems to us to be more equitable to hold the attorney liable in the absence of his express indication to the contrary, since the attorney may avoid liability by the simple expedient of indicating to the reporting service or other provider of services that the client and not the attorney is liable for the obligations incurred. *(See, Burt v Gahan,* 220 NE2d, *supra,* at 819.)

This view takes into account modern litigation practices, under which the attorney orchestrates and manages the litigation and the reporting service looks to the attorney for direction as well as payment; "more than a mere agent [the attorney] is governed by higher principles than those relating to the ordinary, common law principles of 'master and servant' " *(Ingram v Lupo,* 726 SW2d, *supra,* at 797). Adoption of this rule would not absolve the client of liability since payment for litigation costs is ultimately the responsibility of the client. Concur—Sullivan, J. P., Ross, Carro, Milonas and Ellerin, JJ.