Charles BARYLSKI and Loretta Barylski, Plaintiffs-Respondents,

v.

Bert ANDREWS and Betty Andrews, Defendants-Appellants.

No. 32675.

St. Louis Court of Appeals.

Missouri.

Jan. 21, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied March 24, 1969.

Application to Transfer Denied May 12, 1969.

William J. Hormberg, Clayton, for defendants-appellants.

William R. Kirby, Milton F. Napier, St. Louis, for plaintiffs-respondents.

NORMILE, Special Judge.

In this action for fraud in the sale of a house, defendants appeal from a judgment on a jury verdict in favor of both plain-

tiffs and against both defendants for the sum of $1,500.

The property at 4924 Plover in St. Louis is an asbestos shingle bungalow-type residence with three bedrooms, living area, dining area, bath and built-in kitchen. On March 9, 1953, it was partially destroyed by fire with very substantial damage to the interior of the house. The fire rendered the house untenantable since the entire inside was charred and burned. After the fire the house was condemned by the City of St. Louis. Subsequently, the house was purchased by the defendants who made application in June of 1953 to the City of St. Louis for a permit to repair the home. The defendants did repair the house by their own efforts and with the use of "swapped" labor. By May 12, 1954, defendants had complied with all the requirements of the building inspectors, and a permit was given for occupation of the home.

The defendants moved into the home in 1954. About two years later, they began to cover the basement with sheet rock. The house was then listed for sale with the Keeney-Toelle Realty Company and was later sold to that company in a trade on an apartment house wherein the defendants were allowed the sum of $8,200 on the house. Defendants continued to live in the house as tenants, and about seven months later they repurchased the home from Keeney-Toelle for less than the selling price. After the repurchase, defendants made other repairs, including installation of a $1,200 kitchen. They also began to make a playroom or a rathskellar in the basement. During this period, the burnt portion of the basement was covered with sheet rock, and the remaining charred portions of the basement were painted white. In 1958, the house was listed for sale with the Jay Realty Company. Defendant Bert Andrews had previously worked as a salesman with this company and was a friend of their agent, Mr. Barbera. Mr. Andrews discussed the fire and the repairs made to the house with Mr. Barbera.

In October 1958, Mr. Barbera showed this house to the plaintiffs Charles and Loretta Barylski, who were making their first home purchase. At this time the house was newly painted, had new hardwood floors and a built-in kitchen. At the time of the first visit of plaintiffs to this house, neither of the defendants was present. About a week later, plaintiffs again visited the house when defendant Betty Andrews was present; and she showed them through the house and the basement. Mrs. Andrews told plaintiffs that the light bulbs had been taken out of the basement because the children left the lights on. Upon inquiry of Loretta Barylski, Mrs. Andrews stated to plaintiffs that "the house is in fine condition." Mrs. Andrews did not tell plaintiffs that the house had been in a serious fire. Plaintiffs thereafter purchased the house from defendants for $10,-000.

In April 1963 after a leak developed in the roof, water ran down behind the walls of the home. While repairs were being made, it was discovered that there was charred wood between the wallboards. Plaintiffs found the two-by-four studs were scorched and burned in the living room, two bedrooms and kitchen. The wallboard in the basement was removed, and the sills were found to be burned and charred. It was possible to knock hunks of charred wood off the sills with the fingers. This condition covered about 50 per cent of the basement's ceiling.

All testimony at trial indicated that the house was structurally safe. However, an expert testified that in 1958 the property would have been worth $9,000 without evidence of the fire but that the property would then have been worth only $4,500 under the conditions as outlined in a hypothetical question covering the condition of the house at the time of the sale.

It is to be noted that the defendant, Bert Andrews, never met, talked to, or made any statements to the plaintiffs or to either of them.

Appellants urged that a submissible case was not made by plaintiffs since it was not shown that an intentional misrepresentation of a material fact was made by the defendants to the plaintiffs and since there was no duty on defendants' part to mention the previous fire damage to the house in the absence of inquiry by the plaintiffs.

Fraud is never presumed, but must be established by evidence and the burden of proof is on the party who charges fraud. Schnuck v. Kriegshauser, Mo., 371 S.W.2d 242; Shephard v. Woodson, Mo., 328 S.W. 2d 1. However, it is not necessary that the elements be established by direct testimony but may be established by facts and circumstances. Lowther v. Hays, Mo., 225 S.W.2d 708. Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. Schnuck v. Kriegshauser, supra; Smith v. Tracy, Mo., 372 S.W.2d 925.

The tendency of modern decisions is not to extend, but to restrict the rule requiring diligence and similar rules, such as *caveat emptor,* and the rule granting immunity for dealers' talk; to condemn the falsehood of the fraud-feasor rather than the credulity of his victim. Shechter v. Brewer, Mo. App., 344 S.W.2d 784, l. c. 789.

Was there a representation? In determining this question we must consider not only the statement by Betty Andrews that: "The house is in fine condition," but also the actions of both defendants in concealing the condition of the home and the failure of both to disclose this to the plaintiffs. In Lindburg Cadillac Company v. Aron, Mo.App., 371 S.W.2d 651, it was stated: " * * * a representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him * * * If he fails to disclose an intrinsic circumstance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it."

In the case of Vendt v. Duenke, Mo. App., 210 S.W.2d 692, the petition of plaintiff alleged that the defendants had cheated plaintiffs by installing the foundation of their home on filled ground without footings of any kind and that this faulty construction was covered up and concealed by the defendants so as to escape detection. The Court stated: "It is held that before mere silence can amount to an actionable fraud, it must relate to a material matter known to the party sought to be held. * * * There must also exist a legal duty on the part of the latter to disclose, which duty may arise from a relation of trust, from confidence, any quality of condition, or superior knowledge which is not within the fair and reasonable reach of the other." The Court found that the plaintiffs were not aware of the defect, its cause or its nature, and they could not be charged with constructive knowledge of it. The Court held that the defect was a material one; and that if the jury believed the evidence that the house had been constructed on soft-filled ground without footings, they would be justified in finding that the defendant was under a duty to disclose to plaintiff the manner of the construction of the house, and in failing to do so he had practiced a fraud upon them.

In the instant case the seriously burned condition of the home which was concealed by the painting, papering, plastering, and wallboarding appears to be as material a defect as that of the foundation in the Vendt case. The plaintiffs could not have been charged with knowledge of this

condition. In fact, it was so well concealed that it was not discovered until four years after the purchase of the home.

In their brief, appellants cite the case of Ash Grove Lime and Portland Cement Company v. White, 361 Mo. 1111, 238 S.W. 2d 368, to support their position that a submissible case was not made. This was a case where the identity of the purchaser of land was concealed by an agent who misled the sellers as to the actual buyer. Distracting statements were made referring to "the man" and "the gentleman" as the buyer when, in fact, the purchaser was a quarry operator. The quarry operation required blasting and was attended by noise, dust, and smoke. The Court found that the deception as to the identity of the purchaser was a material one and stated the "general doctrine" that if either party to a transaction conceals some fact which is material, which fact is within his own knowledge and which it is his duty to disclose, he is guilty of fraud. The Court noted that silence was sometimes permitted. It went on to say: "If in addition to the party's silence there is any statement, even any word or act on his part, which tends affirmatively to a suppression of the truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observation from the real facts, then the line is overstepped, and the concealment becomes fraudulent."

▮ In the instant case, the acts of both defendants in covering and painting the burned and charred sills, joists, timbers, and other interior areas did affirmatively suppress and cover up the truth and withdrew the plaintiffs' attention from the real facts. The statement of defendant Betty Andrews that "The house is in fine condition" also tended affirmatively to cover up or disguise the truth and to distract the plaintiffs' attention from the real facts as to the condition of the home. In this case, the silence of the defendants as to the fire damage related to a material matter known to them. Their duty to speak out arose from their superior knowledge which was not within the fair and reasonable reach of the plaintiffs.

Appellants also cite the case of Shepherd v. Woodson, Mo., 328 S.W.2d 1. However, that case affords little comfort to their position. Rather it stands for the rule that even representations as to value may amount to fraud if the seller has or claims to have special knowledge while the purchaser is ignorant in respect to the value, which fact is known to the seller and the representations are made with the intention that they should be relied upon. A representation as to the condition of a home is certainly analogous.

Assuming a false representation by the defendants by their concealment of the condition of the home and by the statement of one defendant designed to suppress the truth, was the resulting false representation material?

In the case of Shecher v. Brewer, Mo. App., 344 S.W.2d 784, the misrepresentations alleged were that "The foundation was in good condition, had never settled and had never been repaired." Another representation was that the foundation was in good shape because the basement walls "were in obvious good condition." Plaintiff afterwards discovered that the foundation had previously deteriorated and settled and had, in fact, been repaired before the negotiations. The foundation continued to settle thereafter to the damage of the plaintiff. The Court noted that the representations related to latent defects and it would have been necessary to excavate and explore the foundation structure in order to learn what the defendant already knew. The judgment for the buyers was affirmed. Similarly, it would have been necessary for the purchasers here to have removed the wallboarding in order to learn what the defendants already knew about the burned condition of the interior structure of the house.

▮ The representation in the Vendt case, supra, also related to a latent condi-

tion concerning the foundation of the house. It cannot be said that these conditions were less material than the conditions which existed here. Testimony at time of trial on behalf of plaintiff was that the market value of the home would have been affected by having been in the fire. That without evidence of a fire, the value would have been $9,000 in 1958; and that with knowledge of the fire and the actual condition of the property, the reasonable market value would only have been $4,500 at that time. The representation was certainly a material one.

 Defendants knew of the fire, of the condition of the house, and of the plaintiffs' ignorance of this condition. It is obvious that they intended that plaintiffs purchase the house under this misapprehension. The plaintiffs were obviously ignorant of the concealment of this latent defect. They obviously relied on the truth of the representations as to condition by making the purchase. They were entitled to rely on this representation since the truth was not readily ascertainable to them where a latent defect was involved, and they lacked equal facilities for learning the truth concerning the condition of the house. Thus, all the elements of a fraud were demonstrated and the case was properly submitted to the jury who found in favor of the plaintiffs.

▮ Appellant urges that the Court erred in giving plaintiffs' verdict-directing instruction. However, the only argument made under this point in appellants' brief was that the defendants had repaired the house to make it liveable rather than with an intent to defraud, and that all the evidence was that the house remained structurally safe. In this case, the issue of "fraudulent intent" was for the jury to determine; and they have done so. The structural safety of the house is not relevant where its burned condition, though covered, very materially affected its value. In essence, appellants' objection to the instruction is that a submissible case was not made, and so, no instruction should have been given. That point has already been determined herein.

Appellants' last point alleged error in the refusal of defendants' motion for a directed verdict "for the reason that no actionable fraud was suggested, testified to, or proved as to either Defendant." This also goes to the submissibility of the case, and has been determined by the consideration of the other points raised.

The judgment of the trial court is affirmed.

ANDERSON, P. J., and SEMPLE, Special Judge, concur.