Jo-Ann **BARROWS** and **Coffelt Land Title, Inc.**, Appellants,

v.

**FIRSTAR BANK** f/n/a Mercantile Bank, Respondent,

Virginia L. Fuqua, Defendant.

No. WD 61363.

Missouri Court of Appeals, Western District.

April 29, 2003.

---

Lynn Ballew, Harrisonville, for Appellant.

Joe Willerth, Independence, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Jo-Ann Barrows, the purchaser of a piece of real estate, and Coffelt Land Title, Inc., her title insurer, appeal a judgment in favor of respondent Firstar (hereinafter "Bank"), denying their petition for declaratory judgment and injunctive relief seeking to halt the Bank's attempt to foreclose upon real estate under an unreleased deed of trust given Bank by Virginia Fuqua and Bonita Snider before they sold the property to Barrows. Those prior owners misled Barrows and Coffelt into believing that a loan secured by the property had been paid, when they had, instead, merely executed a modification and extension agreement regarding that loan. The trial court found that Barrows and Coffelt were on constructive notice of the Bank's interest, and, therefore, Barrows did not have protection as a bona fide purchaser against the Bank's attempt to foreclose on the unpaid loan. We find that the trial court did not err in its judgment, and affirm.

## Facts and Procedural Background

The case was tried to the court upon a partial stipulation of facts. The facts most favorable to the judgment are as follows. Firstar (now known as "US Bank") was the mortgagor on the parcel of real property at issue in this matter, holding a 1993 note and deed of trust executed by Virginia Fuqua and Bonita Snider, former owners of the property. The deed of trust was properly recorded with the Jackson County Recorder of Deeds, and provided that it secured the indebtedness created by the note and any modifications, extensions, or renewals to that note.

The 1993 note was scheduled to reach maturity in 1998. In August 1998, the parties to the note entered into a modification agreement changing many of the original terms and established a new maturity date of August 5, 2000. This modification and extension agreement was not recorded.

Due to software limitations in the Bank's computer system, the Bank's bookkeeping department was unable to enter the revised terms of the loan into its accounting system under the entry for the original loan. As a consequence, it was necessary for them to "rebook" the loan, by closing out the original loan in the system and entering a "new" loan into the system whose terms reflected those agreed to within the modification agreement.

As part of that process, the original entry for the loan was taken to a zero balance in the Bank's system in October 1998. As a result, a "goodbye letter" was automatically generated by the Bank's system, which could not distinguish between accounts that had been taken to a zero balance because the loan had been fully paid and those that had been rebooked. It

was the Bank's practice to manually cull the letters generated when a loan was rebooked, so that they would not be sent out to the borrower. For some reason, however, the "goodbye letter" was not discarded in this instance and was sent to Fuqua and Snider, unsigned.

While the original entry for the Snider/Fuqua loan was closed out in October 1998, the new entry of the loan, reflecting the modified terms, was not entered into the Bank's system until a number of weeks later. In the interim, Fuqua and Snider undertook to sell the property to appellant Barrows. Appellant Coffelt was providing title insurance for the transaction.

Coffelt and Barrows had actual knowledge of the recorded deed of trust. However, Fuqua and Snider proffered the "goodbye letter" and made other representations that the mortgage on the property had been satisfied. At trial, an agent of Coffelt testified that she might have contacted the Bank via phone to confirm that the 1993 loan had been satisfied.[1] At no point does it appear that Coffelt requested either a payoff letter or a deed of release from the Bank. The sale of the property was consummated on November 6, 1998. The entry of the modified loan into the Bank's system was made on the same date.

There is a dispute regarding when the Bank last received payment on its loan to Snider and Fuqua. Regardless of the date of last payment, however, the loan went into default, and the Bank attempted to foreclose on the property in June 1999. Only after receiving notice of the Bank's intended foreclosure, did Barrows and Coffelt claim they first learned that the property was still encumbered by the Snider/Fuqua loan.

As a result, Barrows and Coffelt initiated the underlying proceeding, seeking a declaratory judgment that Barrows took the property free of the obligation in the modified note and an injunction barring the Bank from proceeding with the foreclosure. They also sought to recover against Fuqua and Snider,[2] under a fraud theory.

The trial court tried the case under a partial stipulation of facts. It held that Barrows and Coffelt had actual and constructive notice that the property might be encumbered by an unrecorded modification and extension agreement, based upon the recorded 1993 deed of trust. It, therefore, granted judgment in favor of the Bank on the claims raised by Barrows and Coffelt, finding that the Bank could proceed to foreclose on the real property under its deed of trust. Barrows and Coffelt did, however, obtain judgment against Fuqua upon their fraud claim.

Barrows and Coffelt now appeal that portion of the judgment in favor of the Bank.

### Discussion

■ The parties agree that the applicable standard of review in this case is that discussed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment must be affirmed unless "no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Brizendine v. Conrad*, 71 S.W.3d 587, 590 (Mo. banc 2002).

---

1. Coffelt's discovery responses, including its responses to request for admissions, indicate, to the contrary, that there was no inquiry to the Bank regarding the status of the deed of trust or the underlying indebtedness prior to November 6, 1998.

2. Snider was dismissed from the case prior to trial.

Here, Barrows and Coffelt contend that the trial court's judgment was not supported by substantial evidence or was against the weight of the evidence on several grounds. In determining whether the judgment is supported by substantial evidence, we view the evidence in the light most favorable to the judgment and defer to the trial court's credibility determinations. *Searcy v. Seedorff*, 8 S.W.3d 113, 116 (Mo. banc 1999). Further, we grant the respondent the benefit of all reasonable inferences favorable to the judgment and disregard all contrary inferences and evidence. *Farmers' Elec. Coop., Inc., v. Mo. Dep't. of Corr.*, 59 S.W.3d 520, 522 (Mo. banc 2001). When asked to determine whether a judgment is against the weight of the evidence, we also view the evidence and the permissible inferences that may be drawn therefrom in the light most favorable to the judgment. *Neal v. Sparks*, 773 S.W.2d 481, 486 (Mo.App. 1989). "We will set aside the judgment on the basis that it is against the weight of the evidence only with caution and with a firm belief that the decree is clearly wrong." *Komosa v. Komosa*, 776 S.W.2d 424, 425 (Mo.App.1989).

### Was the Original Snider/Fuqua Loan Satisfied?

In the first of their four points on appeal, Barrows and Coffelt argue that the trial court erred in finding that the promissory note had not been satisfied, because that finding was not supported by substantial evidence and was against the weight of the evidence. They contend that the evidence adduced at trial established that the note had been satisfied on the Bank's books and that the Bank later created a new loan reflecting the new terms agreed to between the Bank, Snider, and Fuqua. The Bank responds that the trial court did not err, as the above finding was supported by substantial evidence and was not

against the weight of the evidence. They argue that the evidence established that there was no intent to release Fuqua and Snider from the debt, but that the "new" loan was created because that was the only way of entering the modified terms of the loan into the Bank's computer system.

Ultimately, the question presented in this point on appeal is whether a novation has taken place and that the Bank issued a new loan in place of the original loan that was secured by the deed of trust. Determining whether a novation has taken place requires examining the intent of the parties. *McDowell v. Miller*, 557 S.W.2d 266, 271–72 (Mo.App.1977). At trial, Barrows and Coffelt bore the burden of establishing that a novation had taken place. *See id.* at 272.

In some circumstances, even the issuance and substitution of a new loan does not deprive the lender of the protection provided by a deed of trust. *See Constr. Equip. Mgmt., Inc. v. Dunhill Dev. Corp.*, 892 S.W.2d 639, 644–45 (Mo. App.1994). In such cases, the courts look to several factors, such as whether "(1) the loans were for the same amount of money, (2) the loans were made for the same purpose, (3) the loans were secured by the same land, and (4) the only change was in the form of the payments." *Id.* at 645 (italics omitted).

We need not address these factors, however, as the parties stipulated that it was the intent of the parties to *modify* the original loan. A stipulation is binding upon the parties and the court, unless its terms prevent or prohibit its use in a particular proceeding. *See Griffin Contracting Co. v. Hawkeye–Security Ins. Co.*, 867 S.W.2d 602, 605 (Mo.App.1993). As the parties stipulated that the parties intended to modify the original loan, we need

not entertain Barrows' and Coffelt's arguments that a novation took place.

That stipulation contains other provisions that further belie Barrows' and Coffelt's argument that the Bank's bookkeeping indicated that the parties' intent was to enter into a new loan agreement. The parties stipulated that it was necessary to "rebook" the loan, as the terms of the loan could not be directly changed in the Bank's computer system. As such, the trial court could reasonably infer that the "satisfaction" of the old loan and the creation of the "new" loan in the Bank's system was necessary to carry out the intentions of the parties when the original terms of the loan were changed. The stipulation further provided that "goodbye letters" were automatically generated when a loan was taken to a zero balance, regardless of the reason. As such, the mere generation of such a letter does not support the intent argument Barrows and Coffelt seek to advance.

There was no evidence that the borrowers paid off the loan. Instead, they attempt to recast the procedure required by the bookkeeping limitations of the Bank's computer system into a claim that the Bank "paid off" the original loan and issued a new loan to the borrowers. Essentially, they argue that the Bank paid off the original loan, using funds from the "new loan." That argument requires the court to ignore the parties' stipulation and to adopt an unreasonable view of the other evidence presented at trial. Instead, the greater weight of the evidence establishes that the Bank's actions were merely a bookkeeping formality, and not evidence that the parties intended to enter into a novation. The first point on appeal is denied.

## Coffelt's Lack of Due Diligence

■ For their second point on appeal, Barrows and Coffelt contend that the trial court erred by finding that Coffelt failed to practice due diligence in failing to request a payoff letter or otherwise contact the Bank directly to confirm that the loan had been paid. They argue that the evidence established that the Bank would not have responded to such a request and had otherwise confirmed that the loan had been paid off. As a result, they suggest, no additional inquiry was needed because it would not have disclosed the existence of the "new" loan or its relation to the original deed of trust.

In reply, the Bank argues that Coffelt's reliance on the "goodbye letter" was unreasonable, given that it was unsigned, was not prepared in response to Coffelt's inquiry, nor did it describe the property in question (either by legal description or by address). The Bank points to expert testimony presented at trial that stated that it is industry practice to require a "payoff letter" that specifies the payoff amount and that is directed to the agent of the title company. The Bank further contends that Coffelt failed to contact it, either by writing or by phone, to confirm whether the loan had been paid off.

After reviewing the record, we hold that there was substantial evidence supporting the trial court's finding that Coffelt took no action to contact the Bank to determine whether it held any outstanding debts on the property. While Coffelt contended at trial that one of its employees, Anna Stoppa, made a phone call to an unidentified employee of the Bank to confirm that the loan had been paid, she admitted that she could not recall contacting the Bank.[3] The trial court acted within its discretion in

3. As stated previously, that evidence was also contrary to Coffelt's response to the Bank's requests for admissions.

concluding that her testimony was not credible.

Further, there was substantial evidence that merely making a call to the Bank was not sufficient to carry out Coffelt's due diligence responsibilities. Expert testimony was offered by the Bank that stated that the proper means of confirming that an obligation secured by a deed of trust has been satisfied is through obtaining a deed of release or a payoff letter from the Bank. According to that testimony, the "goodbye letter" was deficient for several reasons: it was unsigned, did not contain a description of the property or a property address, nor was it directed at the closing agent. The proper procedure, according to the Bank's expert, was for the closing agent to obtain a formal "pay-off" letter from the lender, a copy of the satisfaction, or a deed of release.

Barrows and Coffelt rely upon testimony offered by Howard Gosnell, Mercantile's Vice President, that suggested that the Bank would not issue payoff letters regarding paid loan accounts. From that testimony, Barrows and Coffelt argue that it would have been futile to request a payoff letter. However, it is not clear from his testimony that a request for a payoff letter would have been ignored by the Bank under these circumstances, as Gosnell apparently did not know what notations had been made in the Bank's loan management system and whether those notations would have indicated that the loan had been truly paid off in that system or whether it had been rebooked.

There was sufficient evidence in the record regarding due diligence standards in the title insurance industry to support the trial court's conclusion that Coffelt failed to meet those standards. While there was evidence and testimony marshaled by Barrows and Coffelt disputing that contention, it does not appear that the trial court's

conclusion was against the weight of the evidence. "Evidence in the record which might have supported a different conclusion does not necessarily demonstrate that the trial court's judgment is against the weight of the evidence." *In the Interest of A.M.W.*, 64 S.W.3d 899, 904 (Mo.App. 2002). Here, it appears that the trial court acted within its discretion in deciding which pieces of evidence and testimony were entitled to greater weight and credibility. *See Luckeroth v. Weng*, 53 S.W.3d 603, 609 (Mo.App.2001). Accordingly the second point on appeal is denied.

### The Trial Court's Finding That Reliance Upon The "Goodbye Letter" Was Unreasonable Was Not Inconsistent with Its Findings on the Fraud Claim

■ In their third point, Barrows and Coffelt argue that the trial court erred in finding that their reliance on the Bank's satisfaction letter was unreasonable, as that finding was inconsistent with the trial court's entry of judgment against Fuqua regarding Barrows and Coffelt's fraud claim. In ruling on that fraud claim, they claim that the trial court necessarily found that Barrows' and Coffelt's reliance on the "goodbye letter" was reasonable.

The Bank correctly points out that Barrows and Coffelt have misstated the trial court's finding regarding the fraud claim. The trial court made no express finding that either Barrows or Coffelt reasonably relied upon the "goodbye letter" with regard to the fraud claim. Instead, the trial court found that they had reasonably relied upon other misrepresentations made by *Snider and Fuqua*. The "goodbye letter" was not a misrepresentation made by either of those individuals. Snider and Fuqua's misrepresentations were the execution of a general warranty deed and an

affidavit that there were no outstanding liens on the property.

While there might be some logical tension between the trial court's findings regarding the fraud claim and its holding that Barrows and Coffelt could not rely upon the "goodbye letter," those two findings are not mutually exclusive or irreconcilably inconsistent. Point denied.

### The Deed of Trust Provided Notice of the Bank's Lien

 In their last point on appeal, Barrows and Coffelt contend that the trial court erred in finding that the deed of trust constituted notice of the Bank's claim of lien under the unrecorded modification agreement. Instead, they claim that the trial court should have found that Barrows was a bona fide purchaser of the real property in question. They contend that the trial court's decision was against the weight of the evidence and not supported by substantial evidence, on the grounds that the deed did not place Barrows and Coffelt on notice of the unrecorded modification agreement. The Bank replies that the trial court correctly concluded that Barrows could not enjoy bona fide purchaser status, because the deed of trust provided notice that the property was under a lien held by the Bank.

The deed of trust clearly stated that it would apply to modifications of the underlying indebtedness it secured. In circumstances where there is no record proof that the debt secured by a deed of trust (even one that has apparently matured) has been satisfied, the prospective buyer "must inquire as to whether a lien ... has been kept alive by proper extensions." 1 Garrard GLENN, GLENN ON MORTGAGES § 50.5 (1943).

Here, there was no recorded deed of release, nor did Barrows or Coffelt make inquiry or other efforts to obtain a copy of the deed of release. Had they made such attempts, they might have discovered that the loan held by the Bank had never been discharged. Regardless of whether that would have occurred, however, we conclude that the recorded deed of trust placed Barrows and Coffelt on notice that the Bank claimed a continuing security interest in the property. Point denied.

### Conclusion

The trial court did not err in granting judgment in favor of the Bank. The loan to Fuqua and Snider was never satisfied. Coffelt failed to exercise due diligence, instead unreasonably relying upon the unsigned "goodbye letter" that purported to claim that the Fuqua/Snider debt had been paid. The trial court's finding that reliance on that letter was unreasonable was not inconsistent with its findings in regard to the judgment against Fuqua on the fraud claim. Barrows and Coffelt were on notice that the Bank's deed of trust had not been released and that it extended to modifications of the underlying indebtedness.

Finding no error in the proceedings below, the judgment of the trial court is, therefore, affirmed.

PAUL M. SPINDEN, Judge, and JAMES M. SMART, JR., Judge, concur.