John E. WAGNER, et al., Appellant–Respondents,

v.

MORTGAGE INFORMATION SERVICES, INC., et al., Respondent–Appellants.

Nos. WD 67717, WD 67719.

Missouri Court of Appeals, Western District.

June 24, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2008.

Application for Transfer Denied Sept. 30, 2008.

Stephen Wayne Nichols, Kansas City, MO, for Appellant.

Paul David Snyder, Leawood, KS, for Respondent.

Before: VICTOR C. HOWARD, C.J., JAMES EDWARD WELSH and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

## I. Introduction

In May 2002, John and Carol Wagner attempted to refinance the mortgage on their Kansas City, Missouri, home.[1] Mortgage Information Services, Inc. ("MIS") was the escrow agent in this refinancing. During the transaction conflicting information was provided as to the precise amount the Wagners owed to their previous lender. This put in motion a series of events which caused the Wagners' refinancing to go awry, and ultimately fail, because there was a shortage of money to pay off the previous lender in full.

The Wagners filed suit against MIS in Jackson County Circuit Court, alleging, *inter alia,* that MIS, acting as the Wagners' escrow agent, (1) breached its fiduciary duties, and (2) engaged in negligent misrepresentation. MIS asserted a counterclaim alleging that the Wagners had fraudulently misrepresented the amount outstanding on their prior loan. These claims were tried to a jury on September 18–25, 2006. The jury found in MIS's favor both on the Wagners' breach of fiduciary duty claim, and also on MIS's fraud counterclaim, for which it awarded MIS $10,000.00 in damages.[2]

On October 12, 2006, the Wagners filed a motion for judgment notwithstanding the verdict on MIS's counterclaim, and for a

---

1. The home was purchased by John Wagner prior to his marriage to Carol Wagner. However, because the record on appeal indicates that the Wagners both considered the property to be their abode, we will refer to the real estate in question as the Wagners' home.

2. The Wagners voluntarily dismissed their negligent misrepresentation claim with prejudice prior to the case being submitted to the jury.

new trial. The trial court granted the Wagners a new trial on the counterclaim on November 8, 2006, finding that the verdict director on the fraud claim contained a variety of prejudicial errors. The trial court denied the other relief the Wagners requested.

The Wagners appeal. They assert five Points Relied On. Point I argues that the trial court erred in denying their motion for judgment notwithstanding the verdict on MIS's fraud counterclaim, because MIS failed to make a submissible fraud claim against them. Point II alleges that the trial court erred in allowing MIS to cross examine Mrs. Wagner regarding the status of her real estate licensure because this constituted improper collateral impeachment. In Point III, the Wagners argue that the trial court erred in submitting Instruction Number 9 to the jury, because this instruction submitted an improper affirmative defense to their breach of fiduciary duty claim. In Point IV, the Wagners challenge Instruction Number 10, a mitigation of damages instruction. Finally, in Point V the Wagners argue that submission of the verdict director on their breach of fiduciary duty claim (Instruction Number 7) was plain error because this instruction referenced Instruction Number 10 (mitigation of damages) as the relevant affirmative defense instruction, when it should have referenced Instruction Number 9.

MIS cross-appeals, arguing that the trial court erred in granting the Wagners a new trial on MIS's fraud claim.

On MIS's cross-appeal, we affirm the trial court's grant of a new trial to the Wagners on MIS's counterclaim. Based on the error asserted in the Wagners' Point V, however, we reverse the judgment on the Wagners' breach of fiduciary duty claim, and remand that claim for a new trial also. We do not resolve the remainder of the Wagners' Points.

## II. Factual Background

On December 10, 2001, Mr. Wagner refinanced the two existing mortgages on the Wagners' home through the "Meritech/Saxon" loan.[3]

The Wagners felt that the terms of the Meritech/Saxon loan (a 9.875% interest rate, with monthly payments of $8,423.48) were not favorable, and they apparently had difficulties making payments on the loan in a timely and complete fashion. The Wagners intended to use the Meritech/Saxon loan as a "bridge" to more favorable financing, and instructed their mortgage broker, Shona Clark at Allied Home Mortgage, to find them another mortgage with a lower interest rate.

By May of 2002, Allied had found a new lender meeting the Wagners' objectives. Lehman Brothers Bank, in conjunction with Aurora Loan Services, Inc.,[4] preliminarily agreed to loan Mr. Wagner the necessary funds to refinance the Meritech/Saxon loan at a 7.625% interest rate on an "interest-only" basis, which would have saved the Wagners approximately two thousand dollars per month in mortgage payments.[5] Allied contacted MIS to

---

**3.** The "Meritech/Saxon" loan was initially extended by Allstate Home Loans. However, the loan was later purchased by Bankers Trust Company, and was subsequently serviced by Meritech Mortgage Services. On April 9, 2002, Meritech changed its name to Saxon Mortgage Services, Inc.

**4.** For brevity's sake, we will refer to this lender simply as "Lehman Brothers."

**5.** Despite the fact that Carol Wagner was not a named borrower on either the Meritech/Saxon or Lehman Brothers loans, neither party challenges the fact that she was named as a plaintiff, and as a defendant on MIS's counterclaim.

serve as the escrow agent for the refinancing.

On May 3, 2002, Mr. Wagner signed various documents in connection with the refinancing. One was a preliminary Settlement Statement, otherwise known as a "HUD–1," which stated that the payoff amount for the Meritech/Saxon loan was $875,994.54. This payoff amount was based on verbal advice; the Wagners were advised that a written payoff letter would be required by MIS before the transaction could be finalized. On May 8, 2002, MIS received a written payoff letter from Allied that reflected a new payoff figure of $877,853.13. Accordingly, MIS prepared a new Settlement Statement, which was signed by Mr. Wagner on May 9, reflecting this new payoff figure plus two days per diem interest, for a total of $878,320.83.

Refinancing proceeds were disbursed by Lehman Brothers on May 8, 2002. Consistent with the May 8, 2002 payoff letter MIS received from Allied, a check for $878,320.83 was issued to pay off the Meritech/Saxon loan. The Wagners received cash of $2,797.32 as part of the closing.

On May 9, 2002, Meritech/Saxon contacted MIS to inform them that they had received the check, but that the amount ($878,320.83) was insufficient to satisfy the outstanding balance on the Meritech/Saxon loan. Specifically, Meritech/Saxon asserted that the Wagners still owed an additional $15,452.73.

Prior to the disbursement of the Lehman Brothers funds, it is undisputed that two events occurred which had a significant impact on the refinancing. First, no party disputes that Mrs. Wagner stopped payment on the Wagners' April 2002 loan payment of $8,423.48 to Meritech/Saxon, without notifying Meritech/Saxon or MIS. At trial, Mrs. Wagner testified that she was advised by Ms. Clark at Allied to take

this action; Ms. Clark denied that she ever gave Mrs. Wagner this advice.

Furthermore, the May 8, 2002 payoff letter on which MIS relied contained an inaccurate payoff amount. There was voluminous conflicting evidence presented at trial concerning the source of this inaccuracy. It appears to be undisputed that Meritech/Saxon sent the Wagners a payoff letter; that the Wagners forwarded what purported to be the Meritech/Saxon letter by fax to Allied; and that Allied then forwarded the payoff letter on to MIS for purposes of finalizing the Settlement Statement and obtaining necessary funds from Lehman Brothers. Testimony of a Meritech/Saxon representative was presented at trial by deposition, indicating that the payoff amount stated in the version of the payoff letter on which MIS relied was inaccurate, and that Meritech/Saxon would not have issued a letter reporting this amount. At trial, it was MIS's theory that the Wagners forged the document so that the payoff amount was stated to be $877,853.13. The Wagners disputed that they forged the payoff letter, and instead argued that they were victims of MIS's incompetence because at a minimum MIS should have gotten the payoff letter directly from Meritech/Saxon.

After the shortage was discovered, Meritech/Saxon refused the payoff check from MIS, and also refused to release its deed of trust on the home. Compounding the problem, MIS recorded Lehman Brothers' deed of trust as a lien on the Wagners' home without confirming that Meritech/Saxon had released its lien, causing the Wagners to simultaneously have two deeds of trust encumbering their home. MIS retained the refinancing proceeds returned by Meritech/Saxon in escrow; because of the confusion (and on the advice of their counsel) the Wagners made no payments to service either the Meri-

tech/Saxon or Lehman Brothers debts while the dispute was pending.

In September of 2002, the Wagners filed their Petition for Rescission, Declaratory Judgment, and Injunctive Relief against MIS, Meritech/Saxon, and Lehman Brothers. Subsequently, the trial court entered a stipulated order on May 29, 2003, whereby MIS was ordered to return the $878,320.83 in refinancing proceeds it had retained to Lehman Brothers. In return, Lehman Brothers was ordered to release its Deed of Trust on the Wagners' home. Furthermore, Meritech/Saxon was ordered to take certain actions to enable the Wagners to find a new lender for their refinancing. The parties followed the terms of the court's order, and Mr. Wagner closed on a new home mortgage with Wells Fargo on July 10, 2003, in the sum of $1,007,044.21. Pursuant to the terms of the parties' agreement, the Wagners dismissed Meritech/Saxon and Lehman from the lawsuit.

## III. Analysis

### A. The Wagners' Breach of Fiduciary Duty Claim against MIS

The Wagners argue in Points II through V that they are entitled to a new trial on their breach of fiduciary duty claim against MIS. We find Point V to be dispositive.

In Point V, the Wagners assert that the trial court erred in denying their motion for new trial because the submission of Instruction Number 7 to the jury constituted plain error in that it mistakenly referred to Instruction Number 10 as the complete affirmative defense instruction, instead of Instruction Number 9. The Wagners argue that this error resulted in a manifest injustice because Instruction Number 10 was a mitigation-of-damages

instruction, and therefore Instruction Number 7 improperly instructed the jury that the Wagners' failure to mitigate was a complete bar to their claim.

■ We must review this point for plain error because no specific objection was made by the Wagners' counsel on the record. "To preserve a claim of instructional error, a specific objection must be made stating 'distinctly the matter objected to and the grounds of the objection.'" *Carroll v. Kelsey*, 234 S.W.3d 559, 562 (Mo. App.W.D.2007) (citing Rule 70.03).[6] However, Rule 84.13(c) states that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.*

■ In reviewing a claim under the plain-error standard, this Court first asks "whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo.App. W.D.2004).

> If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights.... [I]n the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in

---

**6.** Unless otherwise indicated, all rule references are to the Missouri Rules of Civil Procedure (2008).

manifest injustice or a miscarriage of justice.

*Id.* at 864–65 (citations omitted).

In the particular circumstances of this case (discussed below), we elect to review the Wagners' Point V for plain error, and conclude that not only did the trial court clearly err in submitting Instruction Number 7 to the jury, but that this submission resulted in manifest injustice.

Instruction Number 7 was the verdict director on the Wagners' breach of fiduciary duty claim. It stated:

Your verdict must be for plaintiffs if you believe:

First, plaintiffs were parties to an escrow agreement with respect to the refinance transaction of May 3, 2002, for plaintiffs' home for which defendant served as escrow agent; and

Second, defendant either:

(a) failed to obtain a verified written payoff for the existing Meritech/Saxon loan on plaintiffs' home on or after May 3, 2002; or

(b) failed to retrieve the new Lehman Brothers Deed of Trust before it was recorded, after having learned that the payoff amount to Meritech/Saxon for the existing loan on plaintiffs' home was less than the amount actually required by Meritech/Saxon for a complete payoff; or

(c) failed to immediately advise all parties to the escrow agreement of the payoff shortage after learning that the payoff amount to Meritech/Saxon for the existing loan on plaintiffs' home was less than the amount actually required by Meritech/Saxon for complete payoff; or

(d) failed to return Lehman Brothers loan funds contrary to the demands of plaintiffs and Lehman Brothers for its return to Lehman Brothers; and

Third, defendant, in any one or more of the respects submitted in paragraph Second failed to follow the terms of the escrow agreement and thereby breached its fiduciary duty to plaintiffs; and

Fourth, as a direct result of defendant's breach of fiduciary duty plaintiffs sustained damage;

***Unless you believe plaintiffs are not entitled to recover by reason of Instruction Number 10.***

(Emphasis added.) [7]

Thus, Instruction Number 7 informed the jury that Instruction Number 10 constituted a complete defense to the Wagners' breach of fiduciary duty claim. Instruction Number 10 reads:

If you find in favor of plaintiffs, you must find plaintiffs failed to mitigate their damages if you believe:

First,

When informed of the payoff shortage in mid-May 2002, one or both of the plaintiffs failed to renegotiate the loan with Lehman Brothers, renegotiate the loan with Meritech/Saxon, pay the payoff shortage, or escrow the shortage amount; or

One or both of the plaintiffs failed to make a payment on either mortgage after May 13, 2002;

and

Second, plaintiffs in one or more of the respects submitted in Paragraph First, thereby failed to use ordinary care, and

Third, plaintiffs thereby sustained damage that would not have occurred otherwise.

---

7. In this case we are not called upon and do not volunteer to comment on the propriety of the jury instructions, except as set forth specifically in this opinion.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinary careful person would use under the same or similar circumstances.

■ Instruction Number 10 is clearly a mitigation of damages instruction, not a converse instruction or affirmative defense instruction that would entitle MIS to a complete defense to the Wagners' breach of fiduciary duty claim. *See* MAI 32.29;[8] *see also* MAI, How To Use This Book, at L1. Even MIS essentially concedes on appeal that Instruction Number 7 should not have cited Instruction Number 10, but should instead have referenced Instruction Number 9, which by its terms provided MIS a total defense to the Wagners' breach of fiduciary claim, instructing the jury that "[y]our verdict must be for defendant if you believe" that various events occurred.

■ Accordingly, in submitting Instruction Number 7 to the jury, we find that the trial court committed error that was obvious and clear (a point MIS hardly challenges). We also find that this error resulted in a manifest injustice to the Wagners. One can only speculate as to what the jury concluded the applicable law was, in light of the confusing nature of Instructions Number 7, 9, and 10. At a minimum, however, if the jury followed Instruction Number 7 (as we must presume they did), they would have believed that if the Wagners failed to mitigate their damages, that this finding alone necessitated a defense verdict on their breach of fiduciary duty claim as a matter of law. Of course, this is not the law.

The likelihood of prejudice is compounded by the fact that Instruction Number 10 allowed the jury to find that the Wagners failed to mitigate their damages based on acts or omissions which were not contested at trial. Specifically, Instruction Number 10 states that "you must find plaintiffs failed to mitigate their damages if you believe . . . [o]ne or both of the plaintiffs failed to make a payment on either mortgage after May 13, 2002." At trial, both John and Carol Wagner testified that they did not make a payment on either mortgage after May 13, 2002, based on the advice of their attorney. Further, as far as we can determine it was undisputed that the Wagners did not, before filing suit, renegotiate their loans with Lehman Brothers or Meritech/Saxon, pay the payoff shortage, or escrow the shortage amount. It is true that the jury would have had to make additional factual findings in order to conclude that the Wagners in fact failed to mitigate their damages. But the predicate acts underlying MIS's mitigation defense were essentially conceded. Because of the mistaken labeling in the tail of Instruction Number 7, Instruction Number 10 submitted not merely the issue of mitigation (which could operate to *reduce* the Wagners' recovery), but whether the Wagners were entitled to any recovery *at all*.

Further, because Instruction Number 9 was described in that instruction as a complete defense to the Wagners' claim, the instructions as given gave MIS two separate, complete defenses from which the jury could choose. The fact that the jury was improperly instructed on this critical issue leads us to conclude that this error requires a new trial on the Wagners' claim.

Based on our review of the record, it appears that MIS's own counsel was the cause of the error, which mitigates the effect of the Wagners' failure to object.

**8.** "MAI" refers to the Missouri Approved Jury Instructions (Sixth Edition), unless otherwise indicated.

At the instruction conference, the Wagners' counsel objected to Instruction Number 7, on the basis of a *different* typographical error. MIS admitted that its instruction contained an error, and the trial court took note of the parties' agreed correction. At the end of the instruction conference, the trial court stated that it would make the agreed change, and print clean copies of the instructions. The parties and the Court then turned to a discussion of the permissible scope of the Wagners' closing argument. In the midst of that discussion, a second MIS attorney interjected:

[MIS counsel]: On a different topic, your Honor, on No. 7 did you get ten at the bottom?

The Court: Thank you. No.

After this brief interruption, arguments continued concerning the parameters for closing arguments. In the circumstances, the Wagners' counsel had only a limited opportunity to object, to an error created solely by MIS, in the middle of arguing an entirely different issue.

MIS argues that any error contained in the instruction "was harmless because the jury found for MIS on its fraud claim," and therefore of necessity would have found the Wagners contributorily negligent. But the trial court has ordered a new trial on MIS's fraud claim, a ruling we affirm below. The Wagners' liability on the fraud claim has thus not been conclusively determined. Moreover, under the verdict director for the Wagners' breach of fiduciary duty claim, it was possible for the jury to find in their favor on that claim, while simultaneously finding against the Wagners on MIS's fraud claim. Instruction Number 7 gave the jury four different factual theories upon which to find that MIS had breached its fiduciary duties, three of which ((b) through (d)) involve MIS's actions *after* it became aware of the payoff shortfall. Accordingly, the jury could have found that MIS breached its fiduciary duties to the Wagners, independent of any alleged fraud on their part. In these circumstances, despite the fraud verdict there is no assurance the jury would have concluded that any fraud by the Wagners "directly caused any damages they may have sustained" as necessary to find contributory negligence under Instruction Number 9.

▮ Based on our disposition of Point V, we need not resolve the merits of the Wagners' Points II, III, and IV, which seek identical relief. We do, however, offer the following observations concerning Instruction Number 9, which purported to submit the Wagners' contributory negligence. Instruction Number 9 instructed the jury to determine whether the Wagners "acted in bad faith." The Wagners challenge this instruction, including its reference to a "bad faith" legal standard. The parties expend considerable time in their briefs arguing whether comparative fault, contributory negligence, or neither is an available defense to a tort claim asserting only economic injuries. We do not resolve that issue, however, because it is unnecessary: Instruction Number 9 was not framed as a contributory negligence instruction, since it is not framed in terms of the Wagners' negligence. *See Blackstock v. Kohn,* 994 S.W.2d 947, 952 n. 2 (Mo. banc 1999) (quoting MAI 32.07(B) (1996)). Instead, the instruction is phrased as an affirmative converse, which begins with the language that " '[y]our verdict must be for the defendant if you believe....' " *Id.* at 951 (citation omitted). Such affirmative converse instructions are not favored. *Id.* But the more pressing issue here is that such an instruction is only appropriate where it "presents a hypothetical ultimate issue which, if true, renders it *impossible* for the jury to find

defendant negligent as a matter of law." *Id.* (emphasis added).

Instruction Number 9 did not postulate facts which would negate the possibility of MIS's liability, and it was therefore an improper affirmative converse. The instruction asked the jury to find that the Wagners stopped payment on their April 2002 check to Meritech/Saxon without notifying the other parties, or that they provided MIS with a false loan payoff letter on which MIS relied. But—even if true—these facts would not render MIS's liability *impossible*, particularly where the Wagners' breach of fiduciary duty claim relied in good measure on MIS's actions *after* it discovered the payoff shortfall.

## B. MIS's Fraud Counterclaim Against The Wagners

1. *MIS's Cross–Appeal of the Order Granting the Wagners' Motion for New Trial.*

MIS's cross-appeal challenges the trial court's grant of a new trial to the Wagners on MIS's fraud claim.

 A trial court has broad discretion to grant a new trial, and we review such a ruling with substantial deference. Rule 78.01 permits the trial court to grant a new trial of any issue upon good cause shown. The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions. Appellate courts apply a rule of greater liberality in upholding a trial court's action in sustaining a motion for a new trial, than in denying it. Thus, when reviewing the grant of a new trial, this court is to indulge every reasonable inference in favor of the trial court and may not

reverse unless there has been a clear abuse of discretion. A trial court has abused its discretion when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Andersen v. Osmon,* 217 S.W.3d 375, 377 (Mo.App. W.D.2007) (quoting *Damon Pursell Constr. Co. v. Missouri Hwy. & Transp. Commn,* 192 S.W.3d 461, 469 (Mo. App.W.D.2006)).

The trial court granted the Wagners' motion for new trial because of a variety of defects in the verdict director on MIS'S fraud claim, Instruction Number 14. In seeking to overturn this ruling, MIS argues that the Wagners failed to preserve any alleged error in Instruction Number 14 and that in any event Instruction Number 14 was proper.

 The trial court found four separate deficiencies in Instruction Number 14 which, in its view, justified a new trial. MIS is correct that the Wagners failed to make any of these specific objections prior to submission of the case to the jury.[9] But it fails to recognize that "[a] trial court has the right, in the proper exercise of its discretionary power, to grant a new trial on account of any erroneous ruling, whether an objection has been made or not." *Pasalich v. Swanson,* 89 S.W.3d 555, 562 (Mo.App. W.D.2002)(citing Rules 78.01 and 78.08); *Beer v. Martel,* 332 Mo. 53, 55 S.W.2d 482, 484 (1932). " 'On appeal, when a party claims error because the trial court *denied* that party a new trial, the party ordinarily must have made a proper and timely objection to the claimed error to preserve it for review; but, when, as

---

**9.** While the trial court's order is literally correct that "plaintiffs objected to the instruction at the time of trial," the Wagners' general objection would not have been sufficient to preserve for our review the specific defects on which the trial court relied. As explained in the text, however, this is irrelevant.

here, a party claims error because the trial court *granted* the opposing party a new trial, the opposing party need not have made an objection to the error upon which the trial court granted a new trial.'" *Pasalich,* 89 S.W.3d at 562 (citation omitted)(emphasis original); *see also Steward v. Goetz,* 945 S.W.2d 520, 527–28 (Mo.App. E.D.1997). In *Steward,* the Eastern District directly addressed—and upheld—a trial court's power to grant a new trial based on instructional error to which the respondent had failed to object at trial. *Id.* at 527–28.

As such, we must reject MIS's argument that the trial court erred in granting the motion for new trial, based solely on the fact that the Wagners failed to make specific contemporaneous objections to Instruction Number 14.[10]

Instruction Number 14 states:

Your verdict must be for MIS on its counterclaim if you believe:

First, one or both plaintiffs represented to their loan broker that the payoff amount on the Meritech/Saxon loan was $877,853.13, expecting that the representation would be forwarded, repeated, or communicated to the escrow company involved in the transaction and intending that the escrow company, which was MIS, would rely on the payoff letter in completing the loan refinance transaction; and

Second, the representation was false; and

Third, one of [sic] both of plaintiffs knew it was false; and

Fourth, the representation was material to completing the loan refinance transaction; and

Fifth, MIS relied on the representation in completing the loan refinance transaction; and

Sixth, as a direct result of such representation MIS was damaged.

As previously discussed, the trial court found Instruction Number 14 deficient in four separate respects. The first two (related) deficiencies are sufficient to persuade us that the court did not abuse its considerable discretion in granting a new trial. The trial court first found that the use of the phrase "one or both plaintiffs" in two places in Instruction Number 14 was "confusing, misleading, and is not the law." Specifically, the trial court found this instruction erroneous because it allowed the jury to find *both* John Wagner and Carol Wagner liable for fraud, without making findings that *each one of them* committed each of the elements of fraud. We agree.

The fatal flaw with Instruction Number 14 is that it submits the liability of the Wagners in a single instruction. "Obviously, there was no basis for the trial court to instruct the jury to treat the defendants as a class for purposes of determining fault...." *Hein v. Oriental Gardens, Inc.,* 988 S.W.2d 632, 635 (Mo.App. W.D.1999). As the trial court explained in its order, lumping the Wagners together in the instruction permitted the jury to find that John Wagner engaged in conduct that satisfied one element of fraud, and that Carol Wagner engaged in conduct that satisfied another element. This is particularly problematic because the evidence at trial that suggested that John Wagner engaged in fraud differed substantially from the evidence implicating Carol Wagner. For either Wagner to be liable for fraud, each individual must have engaged in specific conduct that satisfied each and every element of fraud.

In arguing that the trial court erred in finding Instruction Number 14 was im-

10. Based on our disposition of this issue, we deny as moot MIS's motion to strike the Wagners' reference to extra-record discussions of Instruction Number 14.

proper, MIS argues that the "principal objection ... was that the phrase 'one or both plaintiffs' was improper and that an agency instruction should have been given." Citing *Bowers v. S–H–S Motor Sales Corp.*, 481 S.W.2d 584 (Mo.App.1972), MIS then argues that "an agency instruction was not required in the underlying case because agency was never denied."

■ It may well be true that it is unnecessary to establish the elements of a fraudulent misrepresentation claim individually as to each defendant, in particular circumstances where a principal-agent relationship is either proven or conceded. But the fundamental flaw in MIS's argument is that its Counterclaim never alleged that Mr. and Mrs. Wagner acted as agents for each other in connection with the refinancing transaction; instead, the Counterclaim uses the same indeterminate "one or both plaintiffs" phrasing which the circuit court found fatally defective in Instruction Number 14. Moreover, the simple fact that the Wagners were husband and wife does not establish such an agency relationship, since "one spouse is not generally considered an agent for the other for purposes of entering into a contract." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 647 (Mo.App. W.D.2002); *see also Ryan v. Rademacher*, 142 S.W.3d 846, 850 (Mo.App. E.D.2004) ("Neither spouse ... is empowered to act as agent for the other merely because of the marital relationship.") [11]

Given that MIS's Counterclaim did not allege agency, even generally, the Wagners were not required to deny it. Even though the Wagners were not required to respond to an unpled agency theory, it is noteworthy that their Reply to MIS's Counterclaim specifically notes that MIS had (improperly) attempted to lump the Wagners together for purposes of establishing fraud liability. The Reply argues that MIS

> cannot show that Plaintiffs' [sic], jointly or separately, made a direct representation to Defendant.... Merely lumping both Plaintiffs together with a conclusory allegation that they knowingly altered a payoff letter knowing that Defendant would receive and rely upon it ... [does not satisfy] the requirement of fact pleading under the Missouri Rules of Civil Procedure.

Instruction Number 14 was fatally flawed by allowing the jury to aggregate the actions of John and Carol Wagner, as a basis to find *both* of them individually liable for fraud, in the absence of any allegation, or jury finding, that they acted as agents of one another in the refinancing.[12]

---

11. MIS argues that "there is no question that more than one individual can be held liable for the same fraudulent act," citing *Barylski v. Andrews*, 439 S.W.2d 536 (Mo.App.1969), in which both a husband and wife home seller were found liable for fraud. While it may be true that two or more people can be held liable for the same fraudulent act if there is evidence to support the conclusion that each individual engaged in fraud, the verdict director in this case did not require the jury to make such a finding. In *Barylski*, the evidence at trial demonstrated that both husband and wife had engaged in fraudulent nondisclosure, based on knowledge each of them possessed, which was not available to plaintiffs. *Id.* at 539. *Barylski* therefore does not excuse a plaintiff from establishing a basis for fraud liability individually as to each defendant. Further, *Barylski* does not rely on any imputation of the acts or omissions of one spouse to the other, or discuss agency principles, and thus does not assist MIS here.

12. MIS's Brief cites evidence from which it argues that the jury could have found that Carol Wagner acted as an agent *for her husband* (but cites nothing that would have permitted the jury to find that John Wagner acted as an agent for his wife). Be that as it may, the issue was not pled, nor did Instruction Number 14 require the jury to make a finding of agency.

The circuit court's grant of a new trial on MIS's Counterclaim is affirmed.

2. *The Wagners' Motion For Judgment Notwithstanding The Verdict On MIS's Fraud Claim.*

 In Point I of their appeal, the Wagners allege that the trial court erred in denying their motion for judgment notwithstanding the verdict because MIS failed to make a submissible case of fraud.

> The standard of review of denial of a JNOV is essentially the same as for review of denial of a motion for directed verdict. A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. Accordingly, a motion for JNOV is properly granted when the motion identifies at least one element of the plaintiff's case that is not supported by the evidence.

*Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007) (citation omitted).

 To succeed on a fraud claim, a plaintiff must prove the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speakers knowledge of its falsity, or ignorance of its truth; (5) the speakers intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearers ignorance of the falsity of the representation; (7) the hearers reliance on the representation being true; (8) the hearers right to rely thereon; and (9) the hearers consequent and proximately caused injury.

*Trimble v. Pracna,* 167 S.W.3d 706, 712 n. 5 (Mo. banc 2005).

 MIS's fraud claim rested on the allegation that the Wagners prepared, and forwarded, an allegedly altered payoff letter from Meritech/Saxon.[13] At trial, it was undisputed that Mr. Wagner received a faxed payoff letter on May 3, 2002, from Meritech/Saxon regarding the then current mortgage on the Wagners' home. Mr. Wagner testified that after he received this letter, he wrote "Attn Shona" on the cover sheet, and faxed it to Shona Clark at Allied Home Mortgage. Mr. Wagner went on to testify that he sent this payoff letter to Ms. Clark in order to assist in the process of refinancing his home loan.

This evidence was sufficient to satisfy the first element of fraud, utterance of a "representation." On appeal, the Wagners contend that this letter did not constitute a

---

13. In order to analyze whether the evidence was sufficient to make a submissible case against both John Wagner and Carol Wagner, typically we would analyze the evidence as it pertains to each defendant. However, "issues not raised in a motion for directed verdict, but raised in the motion for JNOV, are not preserved for appellate review of the motion for JNOV." *Leo Journagan Constr. Co. v. City Utils. of Springfield,* 116 S.W.3d 711, 724 (Mo.App. S.D.2003). In their motion for directed verdict, the Wagners do not argue that MIS failed to make a submissible case as it pertains to each defendant individually; instead, they argued that evidence was insufficient to make a submissible case against either of them. Accordingly, we will review this argument as it has been preserved for appeal.

"representation" because it was not provided directly by them to MIS, but rather it went through an intermediary, Allied Home Mortgage. But the Wagners concede that we have adopted the following rule:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

*Freeman v. Myers*, 774 S.W.2d 892, 894 (Mo.App. W.D.1989)(quoting RESTATEMENT (SECOND) OF TORTS § 533 (1977)).

■ There can be no doubt, then, that an indirect communication can constitute a "representation" sufficient to support a fraud claim. The evidence would permit a jury to find that this "indirect representation" rule applies here: Mr. Wagner testified at trial that he was aware that an escrow company, like MIS, would be involved in the refinancing transaction, and therefore *the jury could have concluded* that Mr. Wagner knew or should have known that his representation would be repeated to a third-party closing agent. Under *Freeman*, there is no requirement that the Wagners have been aware of MIS's specific identity at the time of their representation—indeed, in *Freeman* the ultimate automobile purchaser/victim was likely unknown (and unknowable) at the time the defendant provided a fraudulent odometer statement to an auto dealer to whom the defendant directly sold the vehicle.

In arguing that the altered payoff letter could not constitute a "representation," the Wagners rely on *Barrows v. Firstar Bank*, 103 S.W.3d 386 (Mo.App. W.D.2003). But in *Barrows*, this court merely upheld a trial court's factual finding that a property purchaser had not acted with due diligence in the circumstances of that case by relying on a "goodbye letter" issued by a lender to the property's seller, indicating that the seller's loan secured by the property had been fully paid. *Id.* at 392. Nothing in *Barrows* would have prevented the jury here from finding, on the facts of *this* case, that MIS could reasonably rely on the payoff letter it received (indirectly) from the Wagners.

■ Nor can we say that there was a "complete absence of probative fact to support the jury's conclusion," *Clevenger*, 237 S.W.3d at 590, that the payoff letter Mr. Wagner forwarded was false, and that he had knowledge of its falsity. The deposition of Lance Tooke, vice-president for acquisitions and document management for Meritech/Saxton, was read into evidence at trial. Mr. Tooke testified that the payoff letter in question did not accurately reflect the correct outstanding balance of the Meritech/Saxon loan, and had been altered. Shona Clark of Allied Home Mortgage testified that she did not alter the letter she received from Mr. Wagner before forwarding it to MIS. There was thus sufficient evidence at trial for the jury to conclude that Mr. Wagner in fact faxed Exhibit 223—the payoff letter as received by MIS—to Allied, reporting an erroneous payoff amount of $877,853.13. While the Wagners may have presented testimony that Mr. Wagner had limited time to alter the document, and that it was implausible that he had done so, this evidence and argument did not prevent the jury from reaching a contrary conclusion.

■ Finally, the Wagners contend that the payoff letter could not have been the cause of MISs injuries because it was Mrs. Wagners stopping the April 2002 mortgage payment that caused the short-

age. Certainly, the evidence would have permitted the jury to conclude that the stop payment was one reason for the shortage; but the Wagners cannot demonstrate that the trial evidence was such that the jury *had* to conclude that [i]t was immaterial what payoff MIS received on May 8th, in terms of the shortage that resulted. At trial, there was evidence that the shortage was in fact $15,452.75, and therefore the halted payment by the Wagners of a single mortgage payment of $8,423.48 would have been insufficient to cause the payoff shortfall that actually occurred (or to prevent the shortfall if the mortgage payment had been timely made). For this reason, there was sufficient evidence for the jury to conclude that Mr. Wagners fraudulent misrepresentation caused MISs damages.[14]

Based on the foregoing, we conclude that there was sufficient evidence at trial from which the jury could have reasonably concluded that Mr. Wagner in fact committed fraud, and we therefore affirm that trial court's denial of the Wagners' motion for JNOV.

### IV. Conclusion

The trial court's ruling, denying the Wagners' motion for new trial on their breach of fiduciary duty claim, is reversed. Because we affirm the trial court's order granting a new trial to the Wagners on

MIS's fraud claim, this entire matter is remanded for a new trial.

All concur.

---

14. In arguing that the trial court erred in denying its motion for JNOV, the Wagners make several arguments unrelated to the elements MIS was required to prove, and therefore these arguments are not relevant "[i]n determining whether the evidence was sufficient to support the jury's verdict." *Clevenger*, 237 S.W.3d at 590. Thus, the Wagners argue that they "had no obligation to provide payoff information to Shona Clark, MIS or anybody else." But there is no requirement that MIS prove that any fraudulent misrepre-

sentation was made by the Wagners pursuant to an "obligation" or duty. For the same reason we must reject the Wagners' argument (again unsupported) that the disputed payoff letter "was unsigned by any party, including the Plaintiffs, and was not certified by the Plaintiffs as containing any information they were adopting as accurate." There is no requirement that a fraud-feasor must "sign" or "certify" a representation, if the speaker intends the hearer to rely on it, and the other necessary elements are satisfied.